# COOS.

## DECEMBER TERM, A D. 1852.

## PICKARD *v.* BAILEY & a.

Two persons, Alexander Hart and Benjamin Hart, claiming certain lands, gave to Rea, as their agent, a diagram of the lots, and instructed him to keep the expenses of the lots separate, some of them being marked A. H. and some being marked B. H. A certain lot, No. 18, was marked A. H., and the agent entered upon and took possession of this lot. *Held*, that evidence of the instructions to keep the expenses of the lots separate, and that lot No. 18 was marked A. H. on the diagram, was competent as tending to show that the possession was that of Alexander Hart, by his agent.

A person, by his agent, entered upon and took possession of a lot, claiming the whole of it, made a road across it, took the general control of it, mowed a clearing upon it for one or two years, kept the road cleared out, and expended on it and other lands in labor and road taxes the sum of $100. During this time no other person was in possession of the lot. Afterwards, one O'Connor, a stranger, entered upon the lot, cleared a portion of it, erected some buildings upon it, and remained there. *Held*, that these acts did not tend to show that the prior possession was abandoned.

To rebut the idea that a claimant has abandoned the possession of land, a copy of a judgment recovered against a person for trespassing upon the land, is competent evidence.

The defendants offered in evidence a copy of a judgment recovered in Canada, certified by a Mr. Bell, as clerk, and purporting to be under the seal of the court. A witness testified that he had long known Mr. Bell to act in the capacity of clerk, and that on this occasion he was with him when the copy was made, and helped compare it with the original, by reading the record aloud while the clerk looked over the copy, and knew it to be correct; and that he was also acquainted with the seal of the court, and knew that the seal affixed to the copy was genuine. *Held*, that the copy was sufficiently authenticated.

Foreign laws are to be proved as facts, by evidence addressed to the court, and not to jury.

Pickard *v.* Bailey.

The defendants offered in evidence ·a copy of a power of attorney, executed before a notary in Canada, and introduced a witness, who testified that he was not a lawyer, but for several years had acted as a magistrate in Canada, and had long been extensively engaged in mercantile business there, and in such employment had become acquainted with the law in relation to notarial instruments; that it was part of the sworn duty of every notary not to suffer any original paper, executed before him, to be taken out of his custody, and that notarial instruments are received in all the courts in Canada without further proof of the execution of the original. *Held*, that the witness was competent to testify to the laws of Canada upon this point.

A letter was sent to an agent, containing a list of certain lands. The agent testified that, in his belief, the list was not in existence; that he had made most diligent search for it among all the papers relating to the lands, which he had kept distinct from all his other papers; that he had looked for it several times within four or five years without success, though not within a year past; that he had not looked over the whole of his private papers, and it was barely possible the list might have been mislaid, or might have got among them, but he believed it had not, but was destroyed. *Held*, that secondary evidence of what the list contained was admissible.

The plaintiff, upon the cross-examination of a witness, proved who were the executors of one Hart. *Held*, that as against the plaintiff, this was competent evidence that Hart left a will.

The defendants offered evidence that a certain log in dispute came from lot No.. 18. The plaintiff then introduced a witness, who testified that he once heard a controversy between one O'Connor and one Hall, in which Hall claimed the log. The defendant asked the witness "where does .this Hall live?" and he answered that he *did* live on a lot adjoining lot No. 18. *Held*, that this evidence was merely hearsay and irrelevant, and did not tend to show that the log came from some other lot.

In an action of trespass for taking a log from a certain lot No. 18, in order to rebut the idea that the claimant had abandoned the possession of the lot, the defendants proved that he had recovered a judgment in Canada against a person for one hundred logs taken from the lot. *Held*, that for this purpose it was not necessary to show that the log in question was one of the hundred logs above mentioned.

TRESPASS, to recover the value of one pine log, or of 700 feet of boards manufactured from it.

The plaintiff proved that he drew the log in question from the highway in Hereford, in Canada, to a sawmill in Colebrook, in this State, and moved it to another part of the mill yard, and the miller having manufactured it into boards for the plaintiff, the defendants carried them away.

Pickard v. Bailey.

The defendants proved that Henry Bailey was the servant of Charles Bailey, and introduced evidence tending to prove that the log had been taken from lot No. 18, in the first range of the township of Hereford, in the province of Canada, and contended that this lot belonged to the estate of Alexander Hart, deceased, and that Charles Bailey was authorized by those legally representing the estate to seize the log and the boards in controversy. To prove that Alexander Hart, in his life time, was owner of lot No. 18, the defendants introduced Alexander Rea, who testified that in 1824 or 1825, he was employed by Benjamin Hart and Alexander Hart, to look after certain lands which they claimed, jointly or severally. Both of the Harts were present, and Benjamin handed him a diagram, with several lots upon it, and instructed him to keep the expenses of the lots marked A. H. upon the diagram, separate from the expense of those marked B. H., for Benjamin did not own those marked A. H. No. 18 was one of the lots marked A. H. upon the diagram which was produced in court. Under these instructions the witness entered upon lot No. 18, and took possession of it, claiming the whole of it for Alexander Hart, and had a road made across the lot, and took the general control and oversight of the lot till 1831. There had been a small clearing upon one side of the lot, before this entry; the rest of the lot was wood land, but it had been surveyed by the surveyor general, and its bounds were established and known. The witness mowed this clearing one or two years, kept the road across the lot cleared out, and expended upon it, and other lands in Hereford claimed by Alexander Hart, in labor and road taxes about $100, which was afterwards refunded to him by Alexander Hart. During those years no one else was in possession of the lot. The plaintiff objected to the evidence of the instructions which the witness received to keep the expenses of this lot separate, but it was admitted as tending to show that the possession was that of Alexander Hart, by his

agent. He also objected to evidence that lot No. 18 was marked A. H. upon the diagram, but the court held it admissible, as tending to show whether Rea, in relation to this lot, acted in behalf of Alexander Hart or of Benjamin Hart.

On the part of the plaintiff, it appeared that about the year 1839 one John O'Connor entered upon lot No. 18, and cleared a portion of it and put up some buildings, and has ever since remained there. The plaintiff derived no title from O'Connor, but upon this evidence contended that Hart's possession had been abandoned.

To rebut the idea of abandonment, the defendants proved that Alexander Hart died between 1838 and 1840, and in February, 1842, Rea, at the request of William Badgley, who acted in behalf of the executors of Alexander Hart, took action against O'Connor. The request from Badgley was contained in a letter (which was produced) and which desired the witness to take care of lands belonging to the estate, a list of which was enlosed in the letter. The witness testified that, in his belief, the list was not in existence; he had made most diligent search for it among all the papers relating to the Harts' lands, &c., which he had kept distinct from all his other papers. He had looked several times for the list, within four or five years, without success, though not within a year past. He had not looked over the whole of his own private papers, and it was barely possible the list might have been mislaid or got among them, but he believed it had not, but was destroyed. The defendant then proposed to prove by the witness that lot No. 18 was upon the list. The plaintiff objected that the loss of the original was not sufficiently proved, but the court thought otherwise, and admitted the secondary evidence. The defendant was also permitted to prove (to rebut the idea of abandonment) that in 1848, the executors of Alexander Hart commenced and prosecuted a suit against O'Connor, in Canada, and recovered judgment. The action was brought for one hundred

Pickard *v.* Bailey.

logs, felled and removed from lot No. 18, and the judgment was that the plaintiffs were the true and lawful owners of them. The plaintiff's council objected that the copy of the judgment against O'Connor was not sufficiently authenticated. It was certified by a Mr. Bell, as clerk, and purported to be under the seal of the court. Mr. Rea testified that he had long known Mr. Bell to act in the capacity of clerk, and that on this occasion he was with him when the copy was made, and helped compare it with the originals, by reading the record aloud while the clerk looked over the copies, and knew it to be correct; he was also acquainted with the seal of the court, and knew that the one affixed to the copy was genuine. The court admitted the copy. The plaintiff also objected to evidence of this suit, because it did not appear that the log in question was one of the hundred embraced in that suit. But the court ruled that without such proof of identity the suit tended to show a continued claim to lot No. 18. The defendants, in showing authority from the representatives of Hart, introduced the deposition of William Molson. He stated that the copy of the power of attorney was a true copy of the original, and remained in force until the 27th of May, 1850, and was signed by himself and Valentine, who were the only executors present, and on his cross-examination he testified that the other executors were Moses David and Mr. Perry. After this deposition had been read, the plaintiff objected that there was no competent proof that Alexander Hart executed a will, nor who were his executors; but the court ruled that those facts were proved by the plaintiff upon the cross-examination, no objection having been made by either party to the secondary evidence.

The plaintiff objected to the admission of a copy of a power of attorney from Isaac Valentine and William Molson to William Badgley. The defendants contended that it was not in their power to produce the original, because the laws of Canada require that in all such cases the origi-

nal shall be retained by the notary before whom the instrument is executed, &c. And the defendants offered a witness, who testified that he was not a lawyer, but for several years had acted as a magistrate in Canada, and had long been pretty extensively engaged in mercantile business there, and in those employments had become acquainted with the law in relation to notarial instruments; that general powers of attorney must be executed before a notary, though some special powers may be made by particular statutes, such as to appear in a commissioner's court without being thus executed; that it was a part of the sworn duty of every notary not to suffer any original paper executed before him to be taken out of his custody, and that notarial copies are received in all the courts in Canada, without further proof of the execution of the original. The plaintiff objected that the witness was not of competent skill to testify to the laws of Canada. But the court ruled that the witness was competent, and that the secondary evidence of the execution and contents of the power of attorney was admissible. This instrument was dated on the 23d day of March, 1839, and executed by Isaac Valentine and William Molson, styling themselves two of the surviving and the sole acting executors of the last will and testament of the late Alexander Hart. It constituted William Badgley their attorney in the most general and comprehensive terms to demand and receive all debts due to them, to commence and prosecute all actions, to lease all the immovable property belonging to the estate of Hart, and to constitute attorneys under them, and to perform every act needful and expedient in and about the premises.

The defendants also introduced the following letter from William Badgley to Charles Bailey:

Montreal, 26th April, 1848.

Mr. Charles Bailey, Canaan,

SIR:—You are hereby authorized to take the necessary proceedings in law for attaching and seizing all the timber

logs as cut on lot No. 18, in the first range of the township of Hereford, in the province of Canada, which are now lying on the banks of Leach's stream, in said township, and to prevent future trespass and spoliation of a similar nature on the said lot, by John O'Connor or others, and to cause the said timber so cut, to be held or disposed of to the best advantage of the estate of the late Alexander Hart, to which the said lot belongs, and which is now represented by Messieurs William Molson and Moses E. David, both of Montreal, Esquires, surviving executors and trustees of the said estate—and accepting your offer to hold the estate harmless from the expense of legal proceedings in the matter.

Given under my hand at Montreal this 26 day of April, 1848.

W. BADGLEY,
Agent and Att'y of the Executors.

The court instructed the jury, among other things, that the plaintiff's possession was sufficient to entitle him to recover, unless the defendants proved a better title in Alexander Hart, and authority from his legal representatives. But that there was evidence tending to show that Alexander Hart is dead, and that the persons who executed the power of attorney were his executors; and if they were such executors, then, although there were two besides, and although one had died before the date of the letter from Badgley, under which the defendants acted, yet the power of attorney to Badgley and the letter to Bailey would constitute a defence to this suit, provided the log was cut upon lot No. 18, and title to this lot was shown in Alexander Hart. The court also instructed the jury that a prior possession must prevail over a subsequent one short of twenty years, unless the prior possession has been abandoned; that slight acts of possession are sufficient against one who can show no better title; and that in this case, if they believed the testimony of Alexander Rea, in relation to his acts upon this

lot, it proved a possession in Alexander Hart, good as against this plaintiff, unless Hart's possession had been abandoned.

After the defendants had introduced testimony tending to show that the log in dispute came from lot No. 18, the plaintiff called Alexander Dennett to prove that it did not. In the course of his testimony, he stated that he once heard a controversy between O'Connor and a Mr. Hall, in relation to this log, in which Hall claimed the log. At this point the witness was stopped by the defendant's counsel, who objected that the claim of Hall to own the log was not competent or relevant to prove that the log did not come from lot No. 18, and the court so ruled. Neither party derived title from Hall. Upon the cross-examination of this witness the question was put, " Where does this Hall live, who you say claimed the log?" And he answered that he did live on a lot adjoining lot No. 18, and was still living in Hereford. The defendants argued that the plaintiff would have called Hall, if he had supposed that the log was not cut upon lot No. 18. The plaintiff's counsel argued to the jury that the question and answer, upon cross-examination, tended to show that the log came from another lot. The court instructed the jury that the question and answer were not to be considered as tending to prove that the log came from some other lot. The jury returned a verdict for the defendants, which the plaintiff moved to set aside because of the rulings and instructions aforesaid.

*Flint*, for the plaintiff.

1. The defence set up in the case ought not to be admitted. If a trespass has been committed to real estate in Canada, the remedy should have been sought there, where the title to said estate could be properly tried, and not by taking property from an innocent purchaser, at a subsequent time and in a foreign country. *Heydock's Appeal*, 7 N. H. Rep. 496.

2. It was not competent for Rea to testify that Benja-

min Hart said he did not own the lots marked on the chart A. H., as it was hearsay merely, and so it would seem were all the instructions of B. Hart to Rea.  B. Hart is alive, a competent witness.

3.  The loss of the list sent to Rea was not sufficiently or properly proved.  Search should have been made more recently, in preparation for this trial, by the defendants themselves, or at their request, and in all places where it might be found, and among all of Rea's papers.  1 Greenl. Ev. §§ 84, 557, 558;  Cowen and Hill's Notes to Phil. Ev. 1224–1231.

4.  The records of the case at Sherbrook were not properly proved.  Rea could not know that the copies were correct, for he read the records aloud, and the clerk looked over the copies silently.  2 Cranch 187, 238;  1 Greenl. Ev. § 514;  Cowen and Hill's Notes to Phil. Ev. 1121;  *Woods* v. *Banks*, 14 N. H. Rep. 109;  and even if the records had been duly proved, that would not be sufficient without showing that there was such a court, duly constituted by the proper authority, which by law had jurisdiction of the cause.  Mr. Rea testifies that he had known said Bell to act in the capacity of clerk, but he does not sign said copies as clerk, but " P. S. C.," and it was not proved that this Mr. Bell had the legal custody of the records, or was the proper officer to certify copies.

5.  These records were not competent to show anything in this suit, for the title to lot No. 18 was not in controversy in that suit, only the title to one hundred logs.  See Greenl. Ev. § 528;  1 Phil. Ev. 327, 333;  17 Pick. 7–14.

6.  There is no competent evidence to show that Alexander Hart ever made a will, or signed in presence of three witnesses, or was of disposing mind or memory, or that any will of his has been proved in any probate or ecclesiastical court;  all which should have been proved by competent evidence before this will had been used in defence of this

Pickard *v.* Bailey.

suit. *Morrill* v. *Otis*, 12 N. H. Rep. 466; 1 Phil. Ev. ch. 8, § 2, p. 496; 1 Greenl. Ev. § 550; 1 Pick. 114.

7.   There being no legal proof of a will, there is of course no legal proof of any executors of a will or their powers. The will must be produced, that the court may inspect it, and see if it is lawfully executed, and what powers it gives the executors. *Morrill* v. *Otis*, 12 N. H. Rep. 466. If there was a will it is not, therefore, to be inferred that the executors ever had the control of the real estate which was of the deceased, much less that they have such control after the lapse of twelve or fourteen years since his decease. The real estate should by law descend to the heirs, and be in their possession; and the court will not infer the contrary, especially without proof, and in favor of a party who has the will in his possession, and purposely withholds it from the court.

8.   The original power of attorney to Badgley should have been produced and proved. It is no reason that our courts should admit a copy without the original and without proof, because courts do so in Canada. 1 Greenl. Ev. 82, 84, 87; Cowen and Hill's Notes to Phil. Ev. 1215, 1219; 2 Kent's Com. 462; 6 B. & Ad. 185. The sworn testimony of the notary should at least have been produced. Story's Con. Laws 634 a. b. 635, 635 c.

9.   It does not appear that said executors, if there were such for any purpose, had authority to grant such powers as were supposed to be granted to Badgley by said power of attorney; and, if all together, the four executors could grant such powers, it is extremely doubtful whether two of them, without the others, could do it. Sugden on Powers 164–166. Besides this, before Badgley wrote said letter, Charles Bailey, one of the two did execute the power of attorney to Badgley, was dead, and where the grantor dies the power is at an end. Just. Inst. 3, 27, *de morte*, § 10; Story on Agency § 488; 2 Kent's Com. 645, 646.

10.   The letter to Charles Bailey did not authorize him

to take boards, only to prevent future spoliations on lot No. 18. This could not authorize him to go into New Hampshire and take the plaintiff's boards. The log in this suit was not one of those mentioned in said letter. Story on Agency §§ 66, 68, 69, 76, 83 ; *East India Co.* v. *Hensely*, 1 Esp. Rep. 112.

11. Possession, without color of title, of wild land, ought only to be regarded as co-extensive with actual occupancy, and should not be extended by construction. Rea took no actual possession of the uncleared lands, and did not run the lines.

*Burns & Fletcher*, for the defendants.

The jury have found that the log in question came from lot No. 18 in the first range in the township of Hereford, that said lot was in the possession of Alexander Hart, deceased, and that Charles Bailey, as the agent of the representatives of said Hart, had a right to take said log or the boards manufactured from the same.

In 1824 or 1825, Alexander Rea was employed to look after the lands of Benjamin and Alexander Hart, which they owned jointly or severally, and entered upon lot No. 18 and took possession of it, claiming it as the property of said Alexander Hart.

He took the general oversight and control of it till 1831, and mowed some grass on it one or two years, and expended money in making a road across it, which was done at the request of said deceased. These are acts sufficiently indicative of possession against all persons not having title. No prior possession is shown in any one, nor any title. This possession must therefore be good, unless abandoned.

The instructions received by Rea from Hart to keep the expenses of said lot separate, was legally admissible as evidence. The instructions were given at the time the diagram was handed him by Benjamin Hart, and in the presence of

Alexander Hart, and was a part of the *res gestæ.* *Sessions* v. *Little,* 9 N. H. Rep. 271; 1 Greenl. Ev. 120–122.

The defendants contend that there is no evidence that Alexander Hart abandoned the possession of the lot, but on the contrary, there is abundant evidence that he did not do so.

The case finds that O'Connor went into possession about the time Alexander Hart died. In a year or two after the decease of Hart, Rea brought an action against O'Connor, at the request of William Badgley, who acted in behalf of the executors of the deceased. In 1848 the executors commenced and prosecuted a suit against O'Connor, and recovered judgment for lumber cut on the lot. The evidence makes a continual claim up to the time of the commencement of this suit.

But it is said on the part of the plaintiff that there is no sufficient evidence of the loss of the list of the lands contained in the letter from Badgley to Rea.

The list was not important. It could not be so considered by Rea, who well knew the bounds of the estate, and therefore it is not to be presumed that he would preserve it as a paper of consequence. It was a paper which was likely never to be enquired for, for any purpose whatever. Rea testified that he had made most diligent search for it among all the papers relating to the Hart lands without success, that in his belief the paper was not in existence, and that he kept those papers distinct from all others. The court may well say, in the language of *Bailey,* J., in *Brewster* v. *Sewell,* 3 B. & Ald. 296, " under the circumstances of this. case, and considering the lapse of time which has occurred, we should have thought that much less evidence would have been sufficient to entitle the party to give secondary evidence."

The plaintiff also contends that the records of the proceedings in the suit in favor of the executors against O'-

Connor are not authenticated or proved in such manner as to make them admissible evidence in this case.

Copies are, first, exemplifications; second, copies made by an authorized officer; third, sworn copies.

It is submitted that the records offered in this case are clearly proved by the two methods last mentioned, viz., by a copy made by the proper officer, under the seal of the court, and which seal is proved by witnesses, also by the witness who compared the copy with the original. 1 Greenl. Ev. §§ 546–552. The records could not have been proved by an exemplification under the great seal, for Canada is not a sovereign State, but a dependancy of Great Britain..

The fact that Alexander Hart made and executed a will is sufficiently proved by the plaintiff's evidence. By his first interrogatory, he assumes that Hart executed a will, and by the answer elicited, it is made certain he did so, and who the executors of that will were.

The laws of a foreign country may be proved by witnesses who are conversant with those laws, like other facts. *Mostyn* v. *Fabrigas*, Cowper 174; Story Confl. Laws 530.

The witness had long been a magistrate, and extensively engaged in mercantile business, and was well acquainted with the law in relation to notarial instruments. This shows the witness competent.

GILCHRIST, C. J. Henry Bailey, one of the defendants, justifies under the authority of Charles Bailey, the other defendant. He alleges that the log was taken from lot No. 18 in the town of Hereford, in Canada, which belonged to the estate of Alexander Hart, and that Charles Bailey was authorized by the representatives of Hart to seize the log and boards in controversy.

The evidence of the authority of Rea, as agent of the Harts, and of his acts under it, was properly admitted. Both of them were present and claimed title to certain lots, the property of each being designated by the letters A. H.

and B. H. respectively. Alexander must be considered as assenting to the statement of Benjamin concerning the ownership of the lots. The fact to be proved was the authority of Rea, and this may as well be done by a third person or by Rea, as by Benjamin Hart, whose evidence is no higher in degree than the evidence of a person who was present and knew what was done. The diagram of the lands of the Harts contained some lots marked A. H., of which lot No. 18 was one, and the evidence was pertinent and proper to show that Rea took possession of it, as the agent of Alexander Hart.

It is argued that the entry in 1839 of O'Connor upon lot No. 18, and his clearing some part of it, and erecting buildings thereon, and continuing to remain there, are evidence of an abandonment of Hart's possession. But these acts are not in themselves evidence of an abandonment. They have no importance unless they are brought home to the knowledge of the prior occupant, and unless he does, or omits to do, some act, which act or omission might indicate his intention to abandon his possession. O'Connor's possession could be no evidence of Hart's intention unless the latter knew of it, and there is no evidence that he or his representatives knew of it until the date of Badgley's letter to Charles Bailey. The possession can undoubtedly be abandoned. Where a party is in possession of land without any claim of title, and surrenders the possession, assenting that another may enter and occupy as he had done, he cannot afterwards maintain a writ of entry founded on his prior possession. *Blaisdell* v. *Martin*, 9 N. H. Rep. 253. So an incorporeal right which may be acquired by enjoyment, may be lost by a discontinuance of the enjoyment, unless the party who ceases to enjoy, at the same time does some act to show an intention of resuming the enjoyment within a reasonable time. *Moore* v. *Rawson*, 3 B. & C. 332. But here the party in possession, not knowing, as we have a right to presume, that O'Connor

had entered upon the land, not ceasing to enjoy it, in any reasonable sense of the words, for O'Connor cleared only a part of it, and it does not appear that he interfered with Hart's occupation in any way, is said to have abandoned his possession merely because O'Connor entered upon the land, and there remained. We do not, however, think that these facts alone constitute evidence of an abandonment.

But even if the entry and occupation by O'Connor do show an abandonment, there are other facts in the case which rebut that evidence. Hart died between the years 1838 and 1840, and in the month of February, 1842, Badgley wrote to Rea, requesting him to take care of the lands belonging to the estate, and inclosing a list of them, which contained lot No. 18. This shows that there was no intention to abandon the land. The executors afterwards recovered a judgment against O'Connor for carrying off logs from the premises. These facts show conclusively that so far from intending to abandon the land, they meant to vindicate their right to it.

But it is said that the facts stated do not authorize the admission of secondary evidence of the list of the lands. Rea testified that he had made most diligent search for it among all the papers relating to the Hart lands, which he had kept distinct from all his other papers. He had looked for the list several times without success, though not within a year past. It was possible the list might have been mislaid, or got among his private papers, but he believed it was destroyed.

Search was made for this paper where it would be likely to be found, and an ineffectual search for a paper in its proper place of deposit has been held sufficient to authorize the admission of secondary evidence. *Jackson* v. *Russell*, 4 Wend. 543. Where an affidavit ought regularly to be in the custody of the person or officer before whom it was taken, diligent and ineffectual search among his papers by him and his clerk was held sufficient. *Harper* v. *Cook*, 1

C. & P. 139; *Jackson* v. *Cole*, 4 Cowen 595. *Rex* v. *Stourbridge*, 8 B. & C. 97. Search for a will should be made in those places where it would most probably be found, as in the testator's desk, or wherever he kept his valuable papers. *Jackson* v. *Betts*, 9 Cowen 208. If the cashier of a bank swears that a paper was received and filed among the papers of the bank, proof of diligent search among the papers of the bank will, it seems, be sufficient. *Taunton Bank* v. *Richardson*, 5 Pick. 436.

Where there is no suspicion of fraud, all that should be required is reasonable diligence to obtain the original. *Minor* v. *Tillotson*, 7 Pet. 101. If the proof of loss adduced establishes the fact with reasonable certainty, nothing more is required. *Jackson* v. *Frier*, 16 Johns. 196.

Although numerous decisions have been made upon this subject, yet from the nature of the case, few propositions of a general character can be advanced. Each decision depends so much on the circumstances of the individual case, that no inflexible rule can be laid down. In the present case, the search was made in the place where the missing list would probably be found, and was prosecuted with reasonable diligence, and we think its absence was sufficiently accounted for, to authorize the admission of secondary evidence of its contents.

It is contended that the copy of the judgment against O'Connor was not properly authenticated.

One recognized mode of proving foreign judgments is by a copy proved to be a true copy. *Church* v. *Hubbart*, 2 Cranch 238. The record of the condemnation of a vessel in a court of vice admiralty is not evidence, *per se*. The seal does not prove itself, but must be proved by a witness who knows it, or the hand writing of the judge or clerk must be proved, or that it is an examined copy. *Catlett* v. *the Pacific Ins. Co.*, 1 Paine C. C. Rep. 594. A copy of a judgment in Nova Scotia is sufficiently authenticated by proof that the witness assisted the clerk in comparing

the copy with the record, and in affixing the seal of the court to the copy, and saw the clerk attest the copy by putting his name to it. *Buttrick* v. *Allen*, 8 Mass. Rep. 273. But where a justice of the peace had gone out of office, and his records were deposited with the county clerk, a copy of a judgment, certified by the clerk, was held not to be sufficiently authenticated. *Mahurin* v. *Bickford*, 6 N. H. Rep. 567. The sentence of a vice admiralty court at Antigua is sufficiently proved by a deposition annexed, stating that the seal affixed thereto was the seal of the court, and also proving the signature and official character of the person whose name was subscribed. *Gardere* v. *Col. Ins. Co.*, 7 Johns. 519.

Several decisions are to be found showing the manner in which the witness should have examined the copy whose authenticity he is offered to prove. In *Rolfe* v. *Dart*, 2 Taunt. 52, a witness produced a copy of a judgment in replevin, and, being asked how he knew it was a copy, said that he read the paper while the officer of the court held and read aloud the record to him, and that the contents of the paper agreed with what the officer read, and the copy was held to be admissible. In *McNeil* v. *Sheriffs of London*, 1 Esp. 263, the witness held the copy while another person read over the original, but he did not compare it by the same person reading over the copy, while he held the original, but Lord *Kenyon* held the copy to be admissible.

In the case of *Gyles* v. *Hill*, 1 Camp. 471, *Lawrence*, J., said, " here the original was read by the officer of the court, but I should have ruled the same way had it been read by any other person." In *Fyson* v. *Kemp*, 6 C. & P. 71, a witness being asked as to the correctness of a duplicate, said that he could not undertake to say that he himself saw the original bill which was delivered to the defendant, but he believed that another clerk held the original bill and he held the duplicate produced at the time when they exam-

ined them.  It was contended that the bills should have been examined crossways, but Mr. Baron *Gurney* was of opinion that what had been done was sufficient.  In *Hill* v. *Packard*, 7 Wend. 391, a witness testified that he examined a copy and compared it with the original, and found it correct.  The record was also certified by the notary of the consulado of Havana, and the copy was decided to be competent evidence, Mr. Senator *Allen* saying that it was a sworn copy, as well as a certified one.

Upon consideration of the authorities upon the question of the due authentication of the copy of the judgment, we are of opinion that it was properly admitted.  The seal was proved by a witness, who testified that it was genuine, that he had long known Mr. Bell to act in the capacity of clerk, and that he read the record while the clerk looked over the copies.  Foreign judgments are to be proved like any other facts, and there is competent evidence of all the facts necessary to authenticate the copy.

The plaintiff objected also to the admission of the copy of the power of attorney, and the defendants offered a witness, who testified that he was not a lawyer, but for several years had acted as a magistrate in Canada, and had long been engaged in mercantile business there, and had become acquainted with the law in relation to notarial instruments; that general powers of attorney must be executed before a notary; that it was part of the sworn duty of every notary not to suffer any original paper executed before him to be taken out of his custody, and that notarial copies are received in all the courts in Canada, without further proof of the execution of the original.

It is well settled that foreign laws, like foreign judgments, are to be proved as facts, and the better opinion is that the evidence should be addressed to the court, and not to the jury.  In this case, the question to be determined was a question of law, whether the copy of the power of attorney was admissible in evidence.  The court was to decide upon

this point, and the evidence to enable the decision to be made, must of course be addressed to the court. Such seems to be the opinion of Story, Confl. of Laws, § 638. In a note he refers to the case of *Thrasher* v. *Everhard*, 3 Gill and Johns. 234, where the court said, " it is in general true that foreign laws are facts which are to be found by a jury. But this general rule is not applicable to a case in which foreign laws are introduced for the purpose of enabling the court to determine whether a written instrument is evidence. In such a case, the evidence always goes in the first instance to the court, which, if the evidence be clear and uncontradicted, may and ought to decide what the foreign law is, and according to *its* determination on that subject, admit or reject the instrument of writing as evidence to the jury. *It is offered to the court to determine a question of law,* the admissibility or inadmissibility of certain evidence to the jury." Upon these remarks, Mr. Justice *Story* very pertinently asks, " is not foreign law offered in all cases to instruct the court in matters of law material to the point in issue ? Can the court properly leave it to the jury to find out what the law is, and apply it to the case ?"

In the case of *Mauri* v. *Heffernan*, 13 Johns. 58, a copy of a bond executed at Caraccas, before a notary, was offered in evidence by the plaintiff. He proved by Don Mariano Velasquez, who had received the degree of doctor in the civil law at Madrid, that by the laws of Spain and her colonies, all contracts were executed before a notary, and remained with him of record, and he gave to the parties certified copies, under his signature, and that such copies are valid in all courts where the Spanish law prevailed. *Thompson,* C. J., said that the proof was abundantly sufficient to show that the original could not be produced upon the trial. In this case the proof was made by a witness whose profession was the law, and the case is in point here, except as to the professional qualifications of the witness.

Pickard v. Bailey.

But in *Kenney* v. *Van Horne*, 1 Johns. 394, *Spencer*, J., in delivering the judgment of the court, said " that courts of law will receive evidence of the common law from intelligent persons of the country whose laws are to be proved." Of their intelligence and capacity to speak on the subject, of course the court must judge, and if their information be such that the court may safely rely upon it, there seems to be no imperious necessity that they should be lawyers by profession. In the case of *Brush* v. *Wilkins*, 4 Johns. Ch. 506, a witness was examined to prove the laws of Demarara, and he testified that he had resided there a considerable portion of the time for the last ten years, and for the last three years was an officer of the civil and criminal court of justice for that colony, and was well acquainted with its laws. He then stated what the laws were. It was said by Chancellor *Kent*, " the law of Demarara on this point has been proved as a matter of fact by a person acquainted with the laws of that place, and who had long resided there and sustained a judicial office. If he was not a professed jurist, the plaintiff should have furnished more certain proof of the laws of Demarara. The evidence produced was competent, and under the circumstances of the case, sufficient, in the absence of all other proof. I cannot judicially know the law of Demarara, but by proof as a matter of fact." In this case the witness was produced by the defendant. He was not a lawyer by profession, but from his position as a judicial officer he had an opportunity to know what the laws of Demarara were. In the case now before us, the witness was not a lawyer, but he had been a magistrate for several years, and in addition to this, from his mercantile employments he had become acquainted with the law in relation to notarial instruments. There is no reason to distrust the accuracy of such evidence, and both upon the authority of the cases referred to, and because we think the decision reasonable in itself, our judg-

ment is, that the witness was competent to testify to the laws of Canada upon this point.

It was not necessary that the log in question should have been proved to be one of the hundred logs for which the judgment was recovered against O'Connor. It appears from the judgment that the logs for which the suit was brought, came from lot No. 18, and the only purpose the party had in view in introducing the copy was to rebut the idea that the possession of the lot had been abandoned. This he showed by proof that an action was brought against O'Connor for trespassing upon the lot, and the ruling of the court upon this point was correct.

The plaintiff contends that there was no proof that Alexander Hart left a will, or who were his executors. But the plaintiff, who excepts on account of the absence of this evidence, must be taken to have proved who the executors were, as that fact appeared in answer to his question upon the cross-examination. As he has proved, then, that there were executors, can he be heard to say that there was no will? We have held, in *Jeffers* v. *Radcliff*, 10 N. H. Rep. 242, that the grant of letters of administration is *prima facie* evidence that the person whose estate is administered upon is dead. So where the defendant omits to plead in abatement, letters of administration are conclusive proof of the death. *Newman* v. *Jenkins*, 10 Pick. 515. If proof of letters of administration is evidence of the death, it is not a strained conclusion to say, that proof that there were executors, is evidence that there was a will. We cannot presume that any court would issue letters testamentary without proof of a will. The reasonable inference is that there was one; *omnia presumuntur rite acta;* and as against this plaintiff we think there is competent evidence of the existence of a will. The plaintiff, having shown that there were executors, must be held also to have proved the fact which the existence of executors ordinarily implies.

The instructions of the court being in accordance with

the views we have expressed, the plaintiff's exceptions thereto must be overruled.

The plaintiff introduces the testimony of a witness who once heard a controversy between O'Connor and one Hall in relation to this log, in which Hall claimed it. This evidence was hearsay only. O'Connor and Hall were both strangers to this suit, and for aught that appears, were both competent witnesses. The evidence should have been rejected on the exception taken by the defendants. But the ruling of the court upon the question and answer was correct. The question was, " Where does this Hall live ?" The witness answered that he *did* live upon a lot adjoining lot 18. The court ruled that the question and answer did not tend to prove that the log came from some other lot. The evidence was indeed utterly destitute of any relevancy, and was properly so regarded by the court.

*Judgment on the verdict.*