Hillsborough
No. 82-245

ROBERT T. WISNIEWSKI *& a.*

v.

JOHN GEMMILL *& a.*

August 31, 1983

*Raymond A. Burgess*, of Manchester, by brief and orally, for the plaintiffs.

*Upton, Sanders & Smith*, of Concord (*Gilbert Upton* on the brief and orally), for the defendants.

KING, C.J. This appeal requires us to determine whether the enactment of RSA chapter 483-A vested exclusive jurisdiction in the New Hampshire Water Resources Board, now the New Hampshire Wetlands Board, over actions involving State waters.

In 1973, the plaintiffs, Robert Wisniewski and Janet Wisniewski, purchased a two-and-one-half-acre tract of land in Hebron, which bordered on the oxbow of the Cockermouth River near the northern end of Newfound Lake. The defendants John Gemmill and Alan Esty own property on the Cockermouth River abutting the plaintiffs' land. In early 1978, Gemmill and Esty became concerned about the course of the river. In the spring, the river often flooded, and eroded land which Gemmill used for a hayfield; Esty was concerned that the river course would bypass a bridge which he had built to give him access to part of his land which was located on the easterly side of the river.

In early March 1978, Gemmill and Esty decided to change the course of the river. They hired a contractor, the defendant Richard Hallberg, to dredge a channel across the oxbow, diverting the flow of the river away from the plaintiffs' property. The defendants did not apply for a permit from the New Hampshire Water Resources Board (board) for this dredging. *See* Laws 1973, 346:1.

A neighbor notified the Wisniewskis of the diversion of the river. The State Water Supply and Pollution Control Commission (commission) was also notified that the river had been diverted. On March 16, 1978, the commission ordered the defendants to cease and desist from diverting the river, and notified them that the board had directed them to return the river flow to the original river bed and to restore the entire area. Gemmill and Esty met with the board on March 21, 1978, and, as a result, the board voted to reconsider its order to restore the river. The board also decided to defer action on the entire matter until the defendants had submitted both an application for a permit and detailed plans for the diversion of the river. In addition, the board promised to investigate the site.

In June 1978, the board visited the site. During this period the parties made several attempts to negotiate an agreement but were unable to do so. No plan was ever submitted to the board, and the board has taken no further action on the matter.

In February 1979, the plaintiffs brought an action in superior court for damages caused by the diversion of the river. A jury trial

was later scheduled for May 1982. Prior to trial, the defendants filed a motion to dismiss, on the ground that the superior court lacked jurisdiction over the action because the board had *exclusive* jurisdiction over matters involving State waters. After a hearing, the Superior Court (*Flynn,* J.) granted the defendants' motion to dismiss, and the plaintiffs appealed. We reverse and remand.

At common law, a riparian owner has a right to the beneficial use of the water of a river or a stream passing through or adjacent to his land. *Poire v. Serra,* 99 N.H. 154, 156, 106 A.2d 391, 392 (1954); *see generally* Kalinski & Forste, *A Survey of New Hampshire Water Law,* 13 N.H.B.J. 3 (1970). An upstream riparian owner may divert water from its channel for any lawful use, so long as he returns it to the channel above the land of the next downstream riparian owner in substantially the same condition as when it reached the upstream riparian owner's land. *Roberts v. Company,* 74 N.H. 217, 219, 66 A. 485, 485 (1907). However, an upstream riparian owner may not divert it so that the river or stream completely bypasses the land of a downstream riparian owner. A riparian owner whose rights have been infringed by the unlawful diversion of a river may bring an action for damages. 93 C.J.S. *Waters* § 32a, at 651 (1956). In some circumstances, an injunction may be an appropriate remedy. 93 C.J.S. *Waters* § 33, at 653 (1956).

The defendants contend that by enacting RSA chapter 483-A the legislature vested exclusive jurisdiction in the board over actions involving State waters, and eliminated the common-law right of individuals to bring actions for violation of their riparian rights. At the time the defendants diverted the river, RSA chapter 483-A required that anyone intending to fill or dredge in State waters obtain a permit from the board. Laws 1973, 346:1, :2. Upon receiving an application for a permit to fill or dredge in State waters, the board would hold a public hearing on the application. Laws 1969, 387:2. The board had the power to grant or deny the application. Laws 1977, 419:2. The board's decision could be appealed to superior court. Laws 1970, 22:3. The statute provided for the assessment of damages if the board's decision constituted the equivalent of a taking. *Id.* It also provided for criminal and civil penalties for violations of the chapter. Laws 1977, 419:3, :4.

We do not believe that, by enacting the regulatory scheme created by these provisions of RSA chapter 483-A, the legislature intended to vest exclusive jurisdiction over State waters in the board, and to eliminate the right of property owners to bring an action for a violation of their riparian rights when the board has not authorized the filling or dredging in State waters. We will not

construe a statute as abrogating the common law unless the intention to do so is clearly expressed in the statute. *Bolduc v. Herbert Schneider Corp.*, 117 N.H. 566, 568, 374 A.2d 1187, 1188–89 (1977). Neither the version of RSA chapter 483-A then in effect, nor the current version of the statute, contains any language which would indicate that the legislature intended to eliminate an individual's right to bring an action in the superior court to enforce his riparian rights when another party has acted in violation of the statute.

We reject the defendants' argument that the section of the statute providing for the assessment of damages if a decision of the water resources board constituted the equivalent of a taking, Laws 1970, 22:3, indicates that the legislature intended to eliminate an individual's right to bring an action to enforce riparian rights against a third party who has acted in violation of the statute. By its terms, the section providing for the assessment of damages applies only *when a decision of the board* constitutes a taking. This section is inapplicable to the present case because the defendants acted without the authorization of the board, and therefore no decision of the board is involved. The defendants contend, however, that the section is applicable because the board may authorize their actions after the fact. The statute in no way indicates that a party who has violated the statute can have the board validate his actions *ex post facto* and thereby shift financial responsibility to the State.

Nor do we accept the defendants' argument that the sections providing criminal and civil penalties for violations of the chapter, Laws 1977, 419:3, :4, eliminate the right to bring an action for an infringement of riparian rights. These sections do not purport to govern the liability of an individual who infringes the common-law rights of another landowner through a violation of the statute.

The defendants argue that even if we should decide that the board does not have exclusive jurisdiction of this case, we should uphold the ruling of the superior court because of the doctrine of "primary jurisdiction." This doctrine of administrative law provides that a court will refrain from exercising its concurrent jurisdiction to decide a question until it has first been decided by the specialized administrative agency that also has jurisdiction to decide it. 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 22.1, at 82 (2d ed. 1983). The doctrine is inapplicable in the present case, however, because RSA chapter 483-A granted the water resources board no jurisdiction over disputes between private parties involving an infringement of riparian rights when the filling and dredging was not given prior authorization by the board.

■ We disagree with the defendants' contention that the plaintiffs' action was properly dismissed because the plaintiffs failed to exhaust their administrative remedies. The statute provided no remedy to an owner for the infringement of his riparian rights when the person filling and dredging in State waters has not previously applied for a permit and has acted in violation of the statute.

■ The decision of the superior court is reversed, and we remand for a trial of the plaintiffs' action.

*Reversed and remanded.*

BOIS, J., did not sit; the others concurred.