Merrimack
No. 90-181

THE STATE OF NEW HAMPSHIRE

v.

GARY P. HERMSDORF

THE STATE OF NEW HAMPSHIRE

v.

QUEEN CITY PHARMACY, INC. d/b/a THE MEDICINE SHOPPE

March 20, 1992

*John P. Arnold*, attorney general (*Mary P. Castelli*, attorney, on the brief and orally), for the State.

*Kenna, Johnston, Craighead & Sharkey P.A.*, of Manchester, (*Bruce E. Kenna* on the brief and orally), for the defendants.

BATCHELDER, J. The defendants, Gary Hermsdorf and the Queen City Pharmacy, Inc., doing business as The Medicine Shoppe (the Pharmacy) appeal their convictions in the Superior Court (*Flynn*, J.) for Medicaid fraud under RSA 167:17-b, I(a) and RSA 167:17-c, I(b). We affirm.

In January 1985, an agent of the New Hampshire Attorney General's Medicaid Fraud Control Unit (Fraud Unit) began investigating the Pharmacy for possible fraudulent Medicaid billing. The investigation was conducted in two ways. The first entailed interviews with Medicaid recipients who had their prescriptions filled at the Pharmacy. The investigator met with several recipients, recorded on an index card the information from the prescription label, and took a single specimen for testing. The second investigation was conducted by undercover members of the Fraud Unit who, with facsimile prescriptions, bought drugs at the Pharmacy. The specimens were then analyzed in a laboratory, and the analysis was compared to the information on the prescription labels. In nineteen instances, nine of which involved sales to actual Medicaid recipients and ten of which were established by sales to undercover agents, the label listed a brand name while the specimen was a generic item.

Upon further investigation, the Fraud Unit found that the Pharmacy or its employees had billed the New Hampshire Division of Health and Human Services as if the brand-name drug had been dispensed, and that the Pharmacy had been paid accordingly. The nineteen separate transactions resulted in fraudulent billings that ranged from $0.27 to $30.48, and the total amount fraudulently obtained was $154.21: $75.83 was from sales to Medicaid recipients, and $78.38 was from sales to undercover agents.

In December 1988, a Merrimack County Grand Jury indicted the Pharmacy for Medicaid fraud, and Gary Hermsdorf, owner and president of the Pharmacy, individually as an accomplice to the Pharmacy's unlawful activity. The defendants were convicted by a jury after a 14-day trial, under RSA 167:17-b, I(a) and RSA 167:17-c, I(b). In March 1990, Hermsdorf was sentenced to 12 months incarceration, suspended, and two years probation; fined $2,000; and ordered to perform 250 hours of community service. The Pharmacy was fined $10,000.

The defendants now appeal their convictions, arguing: (1) they should not have been charged with a felony because the applicable statutes do not allow the aggregation of separate offenses into one crime and the amount of money obtained in each individual transaction was less than $100; (2) the trial court erred in applying the best evidence rule when it relied upon hearsay evidence and found that the original documents were lost or destroyed; (3) the indictment was not sufficient; and (4) the trial court impermissibly amended the indictment by giving erroneous jury instructions. We do not agree with the defendant's contentions for the reasons which follow.

*Aggregation .*

█ The defendants do not challenge the jury's finding that they fraudulently obtained money pursuant to a common scheme. Rather, they argue that the statute under which they were charged does not permit aggregation of small sums in order to create a felony count. They claim that they can be guilty, at most, of nineteen separate misdemeanors, RSA 167:17-c, I(c). We find that RSA 167:17-c, I(b), which provides that "[a]ny natural person who violates [the Medicaid fraud statute] shall . . . be guilty of . . . [a] class B felony if the value of the monetary award or goods or services in question exceeds $100 but does not exceed $1,000 . . . ," does, in fact, allow aggregation.

██ In enacting legislation, the legislature is presumed to be aware of the common law: "'we will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention.'" *Hill v. Dobrowolski*, 125 N.H. 572, 575, 484 A.2d 1123, 1125 (1983) (quoting companion cases *Cooperman v. MacNeil*, 123 N.H. 696, 700, 465 A.2d 879, 882 (1983) and *Wisniewski v. Gemmill*, 123 N.H. 701, 705–06, 465 A.2d 875, 878 (1983)). The common law generally allows aggregation of several thefts into one crime where "the series of takings was motivated by a single larcenous impulse or intent." P. Guthrie, Annotation, *Series of Takings Over a Period of Time as Involving Single or Separate Larcenies*, 53 A.L.R. 3d 398, 401 (1973) (and cases cited therein). Our prior decisions comport with this rule. *State v. Williams*, 133 N.H. 631, 635, 581 A.2d 78, 81 (1990) (permitting the State to aggregate "assuming proof of a common theft scheme"); *see also State v. Merrill*, 44 N.H. 624 (1863). *State v. Sampson*, 120 N.H. 251, 256, 413 A.2d 590, 592 (1980), allowed aggregation where a statute expressly permitted it, but went beyond a statutory rationale.

> "'[W]hen it appears that the successive takings are actuated by a single continuing, criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, it has been held or stated that such successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking.'"

*Id.* at 256, 413 A.2d at 592 (quoting ANDERSON, 2 WHARTON'S CRIMINAL LAW & PROCEDURE § 450, at 76 (1957)). Here, there appears to be sufficient evidence for the jury to have found a general larcenous scheme, and the defendants have not argued otherwise.

█ The defendants urge us to conclude that the felony thresholds in the various enactments relating to fraud imply a legislative

intent to permit aggregation in some cases but not in others. Some of these enactments, by referring to RSA 637:2, V, expressly permit aggregation, but require $500 to constitute a felony, *e.g.*, RSA 638:4, IV(a)(2) (Supp. 1991) (issuing bad checks); RSA 638:5, III(a)(2) (fraudulent use of credit card); RSA 638:7, III(a)(2) (commercial bribery); RSA 638:8, II(a)(1) (sports bribery, $1000 threshold), while others, including the one at issue here, are silent on aggregation, but carry a lower $100 threshold to constitute a felony, *e.g.*, RSA 638:15, II(b) (fraud on women, infants, and children (WIC) program); RSA 167:17-c, I(b) (welfare fraud). In making this argument, the defendants ask for a greater inference than can reasonably be drawn. Accordingly, we hold that the defendants were properly charged with felonies.

*Evidentiary Claims*

The defendants claim that the court erred in allowing the investigator's notes to be used at trial. There is no dispute here that the labels on the vials constitute original writings within the meaning of the best evidence rule, N.H. R. Ev. 1002, which provides that "[t]o prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided in these rules . . . ." Thus, the investigator's notes containing information transcribed from the labels must be excluded unless they fit within an exception to the best evidence rule. The New Hampshire rules of evidence provide such an exception "if [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." N.H. R. Ev. 1004(1).

The defendants concede that the State did not act in bad faith. They argue instead that the State did not prove that the original documents were lost or destroyed, and that the State's search for them was insufficient. They point out that the investigation was conducted up to five years prior to trial, yet the State waited until just two days before trial to attempt to find the recipients and the vials. The defendants also argue that the court's ruling, to not require the original evidence, was tainted by impermissible hearsay in the form of testimony by the investigator as to the information embodied in the prescription vial labels.

In this State, the proponent of secondary evidence must provide "satisfactory evidence" that the original writing has been lost or destroyed, *Howson v. Foster Beef Co.*, 87 N.H. 200, 210, 177 A. 656, 662 (1935), which loss or destruction can be shown by circumstantial proof, *Pickard v. Bailey*, 26 N.H. 152, 166 (1852). The search

for the original evidence must be carried out with "reasonable efforts," *Chagnon Lumber Co. v. Patenaude*, 103 N.H. 448, 449, 174 A.2d 415, 416 (1961), or "reasonable diligence," *Pickard*, 26 N.H. at 167. What constitutes a reasonably diligent search is a matter to be decided by the trial court with particular reference to the facts in the case, *Clooney v. Clooney*, 118 N.H. 754, 756, 394 A.2d 313, 315 (1978); *Chagnon Lumber*, 103 N.H. at 449, 174 A.2d at 416; *Pickard*, 26 N.H. at 166, and the trial court's finding will be upheld unless clearly erroneous, *State v. McPherson*, 127 N.H. 826, 828, 508 A.2d 1076, 1078 (1986).

The defendants contend that the proponent of lost or destroyed evidence bears the burden of establishing the loss or destruction by direct evidence, not hearsay, where the loss or destruction is relied upon to justify the admission of secondary evidence. For this proposition, defendants cite *Moore v. State*, 179 Miss. 268, 175 So. 183 (1937), and E. CLEARY, MCCORMICK ON EVIDENCE 237 (2d ed. 1972). The admissibility of secondary evidence is determined in accordance with N.H. R. EV. 1008, however, which in turn references N.H. R. EV. 104. Rule 104 provides that "[i]n making its determination [the court] is not bound by the rules of evidence except those with respect to privileges." N.H. R. EV. 104(a). Thus, the hearsay rules did not apply at the hearing on the motion *in limine* held in this case, and hearsay was properly considered by the trial court in determining the admissibility of the secondary evidence. Moreover, the court saw corroborating evidence of the investigator's index-card notes in the form of receipts from the pharmacy.

Defendants argue that the search for the missing evidence was not reasonably diligent. As the State points out, RSA 318:47-a (Supp. 1991), provides that "[n]o person shall alter, deface, or remove any label . . . affixed" by a pharmacist in dispensing drugs, and RSA 318:1, XIV (Supp. 1991) and RSA 318:40 (Supp. 1991) prohibit the unlicensed practice of pharmacy, including "the proper and safe storage . . . of drugs." In other words, the State could not easily seize the drug containers. Viewing the evidence in this light, we see no clear error in the trial court's finding that the search was reasonably diligent.

Finally, the defendants claim that the court improperly used that same hearsay testimony for substantive purposes. However, because the defendants made only a "passing reference" to this issue in their brief, we consider it waived and do not explore it. *D. W. Clark*

*Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

*The Indictment*

Gary Hermsdorf makes two claims regarding the indictment under which he was charged. First, he argues that it did not give him an understanding of the charge sufficient for him to prepare to defend against it. *State v. Inselburg*, 114 N.H. 824, 827, 330 A.2d 457, 459 (1974) (indictment must inform defendant of offense charged with sufficient specificity so defense can be prepared and to protect against double jeopardy).

Our cases hold that indictments must "'fully and plainly, substantially and formally'" describe to the accused the offense against which he is to defend, *Inselburg*, 114 N.H. at 827, 330 A.2d at 459 (quoting N.H. CONST. pt. I, art. 15). The question is not "whether the indictment could be more certain and comprehensive, but. . . whether it contains the 'elements of the offense and enough facts to warn the accused of the specific charges against him.'" *State v. Pelky*, 131 N.H. 715, 719, 559 A.2d 1345, 1347 (1989) (quoting *State v. Manchester News Co.*, 118 N.H. 255, 257, 387 A.2d 324, 327 (1978)). An indictment is generally sufficient if it uses the language of the applicable statute, *State v. Taylor*, 121 N.H. 489, 495, 431 A.2d 775, 778 (1981); *but cf. Inselburg*, 114 N.H. at 829, 330 A.2d at 459 (use of statutory language not sufficient when charges remain obscure), but it need not state the specific means by which the crime was carried out, *Pelky*, 131 N.H. at 719, 559 A.2d at 1347.

The statute under which the defendant was convicted provides that no person shall

> "[b]y means of an intentionally false statement or misrepresentation or by impersonation or other fraudulent act or device, obtain or attempt to obtain, or aid or abet any person in obtaining any assistance or benefit or payment under [Medicaid] to which he is not entitled . . . ."

RSA 167:17-b, I(a). The indictment charged that Gary Hermsdorf

> "did, pursuant to a course of conduct, by means of making intentionally false statements or misrepresentations *or other fraudulent act or device, aid or abet* Queen City Pharmacy, Inc. d/b/a The Medicine Shoppe in obtaining more than $100.00 in payments from the [State] under [the Medicaid statutes] to which it was not entitled. Gary P. Herms-

dorf *did cause* Queen City Pharmacy, Inc. d/b/a The Medicine Shoppe to file claims and bill the [State] for so-called 'brand name' drugs which it had purportedly dispensed . . . when it had in fact dispensed so-called 'generic' drugs which it would be reimbursed by the [State] at a lower rate."

(Emphasis added.) An analysis of the language does not bear out the defendant's claims. The relevant portions of the indictment nearly track the language of RSA 167:17-b, I(a), and adequately describe the offense. As the State points out, the language in the indictment—"other fraudulent act or device"—fairly conveys that the defendant did more than just make false statements. The words "did cause" are consistent with the defendant having acted through an agent, his employee. Moreover, attached to and referenced by the indictment was a two-page list of the nineteen transactions on which the charge was based, tabulated by the Medicaid number of the recipient or shopper, prescription number, date dispensed, drug prescribed, drug dispensed, drug billed, amount claimed, amount reimbursed, and the amount by which the State was defrauded. Some of these transactions were those carried out by the defendant's employees. It is thus not credible for the defendant to now assert that he was surprised by the proof offered by the prosecution. The indictment was sufficient.

The defendant's second claim involving the indictment is that the trial court's charge to the jury impermissibly amended it, thereby violating his right to be indicted by a grand jury on a felony offense. The defendant points to the court's use of the word "solicited," which is not contained in the statutes under which he is charged, RSA 167:17-b, I(a) and RSA 167:17-c, I(b), but is a separate crime, RSA 629:2. *See State v. Erickson*, 129 N.H. 515, 519, 533 A.2d 23, 25 (1987) (court cannot permit defendant to be tried on charges not made in the indictment against him).

■ ■ "It is axiomatic that 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *State v. Letendre*, 133 N.H. 555, 558, 579 A.2d 1223, 1225 (1990) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)). "As long as the charge given, in the context of the instructions as a whole, fairly covers the issues and law of the case, reversal is unwarranted." *Letendre*, 133 N.H. at 559, 579 A.2d at 1225.

Because to "aid and abet" is an element of the crime charged, RSA 167:17-b, I(a), the court first defined those words in its jury instructions.

"[L]et me instruct you as to what we mean by the words 'aid and abet' . . . as used in the statute. To prove that the de-

fendant, Gary Hermsdorf aided and abetted this crime, the State must prove beyond a reasonable doubt that the crime of Medicaid fraud took place, that the value of the payment obtained by Queen City Pharmacy as a result of that crime was more than a hundred dollars and that Gary Hermsdorf aided and abetted the commission of the crime by another or aided or abetted in the commission of the crime. To prove that Gary Hermsdorf aided and abetted Queen City Pharmacy in committing the crime of Medicaid fraud, the State must prove that Hermsdorf through a course of conduct, *solicited* the commission of the crime. The indictment alleged that Gary Hermsdorf aided and abetted by making intentionally false statements or misrepresentations or by other fraudulent acts or devices. The indictment further alleges that Gary Hermsdorf caused Queen City Pharmacy Inc. to file false claims and bill the [State] for brand name drugs when in fact it had dispensed generic drugs to Medicaid recipients."

(Emphasis added.) After giving further instructions on other elements of the crime, the court explained the criminal liability of a principal for the acts of an agent.

"The guilt of an accused in a criminal case may be established without proof that he personally did every act constituting the offense alleged. The law recognizes that ordinarily anything a person can do for himself may also be accomplished by him through direction of another person as his agent."

▮ Given both the context of the word "solicit" and the instructions on agency, the judge's instruction fairly covered the issues and law of the case. We thus find that the instruction adequately comports with the indictment and hold that the court did not improperly amend the indictment.

The State filed a motion with this court to supplement the record. Because we decide this case without reference to those materials, the motion is moot.

*Affirmed.*

THAYER, J., did not sit; the others concurred.