Grafton
No. 6974

STATE OF NEW HAMPSHIRE

v.

JOSEPH W. INSELBURG & *a.*

December 31, 1974

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*William S. Orcutt,* chief legal counsel, New Hampshire Civil Liberties Union, orally and by brief, for the defendants.

KENISON, C.J. These are appeals by seventeen defendants from convictions for refusal to withdraw from mob action. RSA 609-A:4 (Supp. 1972) (repealed Nov. 1, 1973). All of the cases were tried before the court except *State v. Lamperti,* No. 4007, which was tried by jury. Defendants moved to quash the complaints, claiming that the complaints failed to apprise them of the crime which they allegedly committed. Defendants also moved to set aside the verdict on the grounds that there was no evidence showing that they were assembled for the specific purpose of committing a crime in concert. *Loughlin,* J., reserved and transferred defendants' exceptions to the denial of these motions. The questions to be resolved by us are whether the complaints adequately apprised the defendants of the nature of the alleged offenses and whether sufficient evidence exists in the record to support the convictions.

The convictions were based on four separate incidents that occurred in 1972 in Hanover and in Lebanon which involved demonstrations protesting the federal government's escalation of the conflict in Southeast Asia. Early on the morning of May 11, a large group of demonstrators congregated in front of the Cold Regions Research and Engineering Labora-

tory (CRREL) located on Route 10 in Hanover, the only installation of the United States Government in the town. Some of the demonstrators were walking in front of the building carrying placards protesting the war. Others were blocking the driveway to the building's parking lot with the result that about fifty cars belonging to employees of CRREL were parked on the shoulder of Route 10.

Upon arrival at the scene, Roland M. Lee, chief of the Hanover police, repeatedly warned the group of demonstrators that although they could demonstrate, they could not prevent access to the CRREL parking lot. Chief Lee told the group that they had to clear the driveway in five minutes or be arrested. After waiting more than the time allotted, Chief Lee admonished the group once again and then began making arrests. As the police removed one demonstrator from the driveway another replaced him so that thirty-one arrests were required in order to open the driveway to traffic. The demeanor of the demonstrators was peaceful and orderly at all times. Of the thirty-one arrests, seven convictions are involved in this transferred case.

About 6 a.m. on May 15, demonstrators congregated in the area of West Park Street, the location of Lebanon's Selective Service Office and the place of departure for the bus which carried inductees to Manchester for their physical examinations. After the bus had arrived and as the inductees boarded it, some of the demonstrators seated themselves in a semicircle around the front of the bus, thereby impeding the passage of the bus. The police who had been observing the incident formed a line between the bus and the demonstrators and advised them that if they did not move, they would be arrested and physically removed. After a five-minute wait and after additional warnings, the demonstrators who blocked the way of the bus were arrested. The demonstrators behaved peacefully and in an orderly manner. Substantially similar events occurred at West Park Street in Lebanon on the mornings of July 13 and August 10. Of the numerous arrests made as a result of the three incidents, ten individuals contest their convictions in this transferred case (seven on May 15, two on July 13, one on August 10). Three of the ten are also appellants with regard to the incident that occurred in Hanover on May 11.

RSA 609-A:4 (Supp. 1972) made it a crime for any person present during mob action, whether a participant or not, to fail to withdraw on being ordered to do so by a police officer. RSA 609-A:1 II defined mob action as the assembly of two or more persons to do an unlawful act. In *State v. Albers*, 113 N.H. 132, 139, 303 A.2d 197, 202 (1973), we construed RSA 609-A:1 II as limited to proscribing gatherings assembled for the specific purpose of imminently committing a crime in concert. The merits of defendants' exceptions must be tested by the terms of these provisions.

I. Sufficiency of the Complaints

Defendants contend that the complaints are defective because they did not apprise them of the crime which they allegedly committed. Part I, article 15 of the New Hampshire constitution provides that "[N]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him . . . ." To meet this constitutional standard it is a rule of long standing in this State that a complaint must inform the defendant of the offense for which he is charged with sufficient specificity so that he knows what he must be prepared to meet and so that he is protected from being put in jeopardy once again for the same offense. *State v. Hoyt*, 114 N.H. 256, 258, 319 A.2d 286, 286 (1974); *State v. Greenwood*, 113 N.H. 625, 626, 312 A.2d 695, 696 (1973); *State v. Strescino*, 106 N.H. 554, 557, 215 A.2d 706, 708 (1965); *State v. Rousten*, 84 N.H. 140, 143, 146 A. 870 (1929); 4 F. Wharton, Criminal Law and Procedure § 1762 (1957). Where a statutory offense is involved, as in this case, it is not sufficient merely to quote the language of the statute unless the statutory wording clearly sets out all of the necessary elements constituting the offense. *State v. Sullivan*, 101 N.H. 429, 432, 146 A.2d 1, 4 (1958); 4 F. Wharton, Criminal Law and Procedure § 1797 (1957).

Judged by these standards the seven amended complaints for the Hanover incident are sufficient. These complaints specified that on May 11, at 8:20 a.m., each named defendant committed "the offense of refusal to withdraw contrary to RSA 609-A:4 . . . in that defendant was present during a mob action to wit a protest demonstration which constituted an

assembly of two or more persons to do unlawful acts, namely to violate RSA 570:1, RSA 570:2 and RSA 572:35 at the entrance to CRREL located on the Lyme Road in Hanover, New Hampshire and did then and there refuse to withdraw from said entrance on being commanded to do so by a police officer." On the basis of the complaints there was no doubt as to the time, place or nature of the statutory violation. The complaints were sufficiently particular to inform defendants of what they should be prepared to meet. From the complaints defendants knew that their refusal to withdraw from the entrance to CRREL was the offending act and that that act was unlawful under specific statutory prohibitions.

Of the ten complaints arising from the incidents that occurred in Lebanon, three stated that at specified date and time on West Park Street each named defendant committed "the offense of refusal to withdraw contrary to 609-A:4 . . . in that defendant did assemble with another person . . . to do an unlawful act, to wit engage in disorderly conduct in wantonly impeding the public way being used by a Vermont Transit Bus, and did, when requested by Chief Neal Wooley, refuse to withdraw from the public way . . . ." Based on the information in these three complaints the defendants had sufficient data to prepare a defense. In addition to the date and place of the offense, the defendants were apprised of what their allegedly unlawful behavior was (i.e., blocking the public way of a bus) and that their refusal to refrain from that behavior allegedly violated RSA 609-A:4.

The remaining seven complaints stemming from the Lebanon incident which occurred on May 15 merely stated that at a specified date and time the named defendants committed "the offense of refusal to withdraw contrary to RSA 609-A:4 . . . in that defendant was present during a mob action to wit a protest demonstration on West Park Street in Lebanon and did then and there refuse to withdraw from said place upon the request of a Police Officer . . . ." Since the complaints did not indicate what unlawful act defendants allegedly committed, these seven defendants did not know in what way they had violated RSA 609-A:1 II. *State v. Sullivan*, 101 N.H. 429, 432, 146 A.2d 1, 4 (1958). An orderly protest demonstration is not an unlawful act nor is it unlawful to assemble

peaceably on public property to petition the government. *State v. Albers,* 113 N.H. 132, 136, 303 A.2d 197, 201 (1973). *See generally* Gunther, Cases and Materials on Constitutional Law 1139-41 (1970); Kalven, *The Concept of a Public Forum: Cox v. Louisiana,* 1965 S. Ct. Rev. 1. The use of the statutory language of RSA 609-A:4 (*i.e.* "refusal to withdraw from mob action") in the complaint does not help to clarify the obscurity surrounding what unlawful behavior defendants allegedly engaged in. "[I]t is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly and expressly, without any uncertainty and ambiguity, set forth all the elements necessary to constitute the offense intended to be punished . . . ." *United States v. Carll,* 105 U.S. 611, 612 (1881); *accord, State v. Gilbert,* 89 N.H. 134, 136, 194 A. 728, 729 (1937). At trial the Grafton County attorney in effect admitted the uncertainty of the language in the complaints by stating that although the complaints did not explicitly say so, the State meant that the demonstration was "unpeaceful".

In its brief the State argues that since the seven complaints refer to a "protest demonstration on West Park Street" in Lebanon, they adequately informed the named defendants of what criminal behavior on their part constituted mob action within the meaning of RSA 609-A:1 II. Apparently, the State reads the phrase "on West Park Street" to mean that the defendants were impeding traffic, but this interpretation is not clear from the language and the defendants should not be compelled to rely on their prophetic skills to discover it. Since the demonstrators gathered on a part of West Park Street separated from the main thoroughfare by a long narrow island and used as a parking area, the inference that they were blocking traffic "on West Park Street" is a weak one. While these seven complaints do not present a situation of patent ambiguity such as where two offenses are charged alternatively in the same complaint, the failure to specify what unlawful behavior the defendants engaged in left the defendants in the dark as to what they should be prepared to meet at trial. *State v. Webster,* 105 N.H. 415, 417-18, 200 A.2d 856, 858 (1964); *State v. Doe,* 104 N.H. 172, 174, 181 A.2d 645, 646-47 (1962). Therefore, defendants' motions

to quash are sustained as to Inselburg, No. 3974; Noda, No. 3975; Davenport, No. 3985; Leonard, No. 3979; Matthews, No. 3977; Mirsky, No. 3976 and Lamperti, No. 4007.

## II. Sufficiency of the Evidence

Defendants also maintain that the State did not prove that they violated RSA 609-A:4 as construed in *State v. Albers,* 113 N.H. 132, 303 A.2d 197 (1973). In *Albers* this court held that RSA 609-A:1 II was constitutional on its face by interpreting it as limited to prohibiting gatherings assembled for the specific purpose of committing a ·crime in concert. *Albers, supra* at 136-37, 303 A.2d at 200. In so holding we recognized the State's interest in proscribing interference with traffic and disruption of the normal functions of public buildings. *Albers, supra* at 138, 303 A.2d at 201. Based on the *Albers* interpretation of RSA 609-A:1, three elements are necessary for the presence of a mob action: the commission of a crime, the specific purpose of imminently committing the crime, and commission of the crime in concert. Without these elements there is no mob action and, of course, without mob action there cannot be a conviction under RSA 609-A:4.

In reviewing on appeal a trial court's determination, the question presented is whether there is evidence in the record from which a reasonable person could reach the conclusion which the trial court did. *State v. Reed,* 106 N.H. 140, 141, 207 A.2d 443-44 (1965); *State v. Long,* 90 N.H. 103, 107, 4 A.2d 865, 868 (1939). We conclude that sufficient evidence exists in this case to sustain the convictions.

With regard to the May 11 incident at the CRREL in Hanover, the demonstrators who blocked access to the driveway committed a crime because RSA 570:1 prohibited wantonly impeding passage in any street or other public place. Testimony of Chief Lee of the Hanover police clearly indicated that as a result of blocking the driveway to the laboratory, traffic on Route 10, a public street, was backed up in both directions for one-fourth of a mile. Although impeding traffic was not the only purpose of standing in the driveway, it was a "specific purpose" as that phrase was used in *Albers supra,* in that defendants deliberately blocked traffic in the drive. *See* Comment of Commission to Recom-

mend Codification of Criminal Laws to RSA 644:1 (Riot) (Supp. 1973). The imminence required by our interpretation of RSA 609-A:1 II in *Albers* is satisfied by evidence indicating that defendants positioned themselves in the driveway from the outset of the demonstration. At the time Chief Lee arrived at the CRREL at 7:40 a.m., the entrance was already blocked by the demonstrators. The fact that two hundred people were gathered at the same place at the same time is evidence that they acted in concert to impede the normal flow of traffic. Chief Lee testified that he believed that the demonstration was planned. The manner in which one demonstrator replaced another who had been arrested also shows that their behavior was concerted.

Since we have sustained the exception to the trial court's denial of defendants' motion to quash the complaints insofar as the May 15 incident is concerned, we need not consider the sufficiency of the evidence with regard to the events of that day.

In Lebanon on July 13, the group of demonstrators that stood in front of the induction bus committed a crime by wantonly impeding the passage of the bus. RSA 570:1. The evidence shows clearly that the group would not permit the bus to move along the street. The purpose of the demonstration was to express dissent to government policies in Southeast Asia by placards, by chanting and by standing in front of a bus carrying prospective draftees. Therefore, even though impeding the passage of the bus was not the only purpose of the group, it was a "specific purpose". The requisite imminence is found in the testimony of Chief Wooley that the defendants positioned themselves in front of the bus as soon as it arrived. The simultaneous presence of defendants at the same place to express commonly shared opinions and their movement as a group to block the way of the bus are sufficient to support a finding that they acted in concert. An almost identical pattern characterized the events of August 10 in Lebanon.

Since there was evidence to sustain a determination that the defendants assembled in Hanover on May 11 and in Lebanon on July 13 and August 10 with the specific purpose

of imminently committing a crime in concert, defendants' exceptions to their motions to set aside the verdict are overruled.

*Defendants' exceptions sustained in part.*

All concurred.