Merrimack
No. 86-324

THE STATE OF NEW HAMPSHIRE

v.

ERNEST THERRIEN

October 9, 1987

766

*Stephen E. Merrill,* attorney general (*Brian T. Tucker,* associate attorney general, on the brief, and *T. David Plourde,* assistant attorney general, orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. In appealing his first degree murder conviction, the defendant argues that the Superior Court (*DiClerico,* J.) committed two errors: (1) in refusing to charge the jury that the defendant could not be found guilty as an accomplice for performing any act except the act of stabbing, which was the only act specified in the indictment; and (2) in failing to withdraw the first degree murder charge from the jury's consideration on the ground that the evidence was insufficient to prove premeditation and deliberation. We affirm.

The jury was entitled to find that during the evening of August 9, 1985, the defendant, Ernest Therrien, together with one Colby or Lessard, entered a house in Concord, from which they stole a knife. Later that evening, the defendant, alone or with Lessard, burglarized another house nearby, occupied by the victim, Helen Ring, an elderly woman whom the defendant knew. The defendant entered the victim's bedroom as she slept and removed the money from her purse. When the victim awakened, the defendant proceeded to kill her, lest she call for help or later identify him to the police. Either alone or together with Lessard, the defendant used the stolen knife to stab the victim twenty-three times in the course of an attack that fractured her skull and some of her ribs, and broke her neck. An autopsy revealed that the victim died from internal bleeding caused by one of the stab wounds.

The defendant removed the victim to the kitchen floor, and covered her body with curtains, which he attempted to set on fire with a lighted cigarette. When he failed at that, he ran the curtains from the body to the kitchen oven and turned on the burners of the stove, in the mistaken belief that he had started the oven, by which he intended to ignite the curtains and ultimately to burn both the body and the house.

After the corpse was discovered the next day, the police observed the defendant's bloody fingerprints in the kitchen, as well as evidence linking his sneakers and clothing to the scene. Objects taken from the house were later found in his possession or traced to him.

The defendant was charged and subsequently indicted for first degree murder as a principal, for "purposely [causing] the death of Helen Ring by stabbing her repeatedly." RSA 630:1-a, I(a). During incarceration awaiting trial, however, the defendant told a cellmate that Lessard had done the stabbing, while the defendant had helped him by grabbing the victim's neck in a "choke hold."

After hearing about this account of the murder, the State obtained an amended indictment charging the defendant both as a principal and as an accomplice, by alleging that:

". . . in concert with and aided by Normand [sic] Lessard, Jr. [he did] purposely cause the death of Helen Ring by repeatedly stabbing her with a knife, thereby causing her death."

The State then entered *nolle prosequi* to the first indictment and proceeded to trial on the second. This appeal followed the general jury verdict finding the defendant guilty of first degree murder.

The defendant concedes that the indictment was sufficient to charge him both as a principal and as an accomplice, by the allegation that he caused the death while acting "in concert with and aided by . . . Lessard." *See State v. Thresher*, 122 N.H. 63, 69, 442 A.2d 578, 580–81 (1982); RSA 626:8, III(a) (one is guilty as an accomplice if "[w]ith the purpose of promoting or facilitating the commission of the offense, he solicits another person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it").

The defendant claims, however, that he could not lawfully be found guilty as an accomplice except for performing the act of stabbing, since stabbing is the only overt act charged in the indictment. Consistently with this theory, he requested an instruction at trial that the jury could not find him guilty as an accomplice based on proof that he "aided in causing Helen Ring's death in other ways besides stabbing." The trial court denied the request. Although the court proceeded to instruct the jury that the State must prove that the stabbing had caused the victim's death, the charge allowed the jury to convict the defendant as an accomplice if he aided the principal by some act that the indictment did not describe. In his brief filed with this court, the defendant stated that his appeal raises the questions whether "the jury could . . . base the conviction of the defendant as an accomplice on an overt act not alleged in the indictment" and whether the trial court's instructions therefore "constructively amended the indictment to permit proof of accomplice liability on overt acts not alleged . . . ."

■ We answer that the trial court's charge effected no amendment and correctly reflected the law that an accomplice may be convicted on the basis of overt acts not specifically alleged. For authority, we look in the first instance to the express holding of this court thirty years ago in *State v. Ball*, 101 N.H. 62, 132 A.2d 144 (1957).

The defendant in *Ball* was indicted as an accessory who had incited, moved, procured and counselled the commission of the crime, *id.* at 63, 132 A.2d at 145, allegations that would charge accomplice liability under today's law. *See* RSA 626:8, III(a). In response to the defendant's argument that the indictment was deficient for failing to specify facts that would establish his guilt as an accessory, the court observed that:

> "It is almost universally held that an indictment of an accessory to a crime does not require that the means and specific facts by which the alleged accessory procured, aided and abetted in the commission thereof be set forth. *Coffin v. United States*, 156 U.S. 432 . . . . A defendant is not entitled in an indictment to information as to how the State is to prove its case."

Although it appears that the issue has not been squarely raised in the intervening years, at least one subsequent case rests *sub silentio* on the rule that *Ball* expressed. In *State v. Burke*, 122 N.H. 565, 569, 448 A.2d 962, 964 (1982), the defendant was charged as an accomplice to armed robbery by threatening the victims with immediate use of force "by means of a gun which he claimed to have concealed in his pocket. . . ." This court held that the evidence was sufficient to convict him as an accomplice to simple robbery even though there was no evidence that he was armed with a gun, which would have been necessary before finding him guilty as an accomplice to armed robbery, *id.*, and even though the indictment charged him only with threatening the use of a gun. The overt acts proven to establish his accomplice liability, *see id.* at 570, 448 A.2d at 965, were unspecified in the indictment and different from the one overt act that the indictment specifically charged. *See also State v. Keegan*, 106 N.H. 152, 155, 207 A.2d 427, 429 (1965) (defendant charged as principal to burglary properly convicted on the basis of uncharged overt acts, which would constitute accomplice liability under today's law).

■■ These cases, and the rule that *Ball* described as nearly universal, should cause no surprise, for they are consistent with the two cardinal and practical criteria for judging criminal pleadings.

*See* N.H. CONST. pt. I, art. 15. First, the complaint or indictment "must inform the defendant of the offense for which he is charged with sufficient specificity so that he knows what he must be prepared to meet . . . ," *State v. Inselburg*, 114 N.H. 824, 827, 330 A.2d 457, 459 (1974) (citations omitted); that is, "so that he can prepare for trial," *State v. Rousten*, 84 N.H. 140, 143, 146 A. 870, 872 (1929) (citation omitted), *quoted in State v. Ball, supra* at 63, 132 A.2d at 145; *see State v. Thresher*, 122 N.H. 63, 70, 442 A.2d 578, 581 (1982); *State v. Bean*, 117 N.H. 185, 188, 371 A.2d 1152, 1153–54 (1977). Second, the formal charge must describe the crime specifically enough to furnish the predicate for raising and deciding a claim of double jeopardy, lest the defendant be charged later with what is arguably the same offense. *State v. Thresher supra*; *State v. Bean, supra* at 188, 371 A.2d at 1154; *State v. Inselburg supra*.

It is commonly held that these twin standards are satisfied by a written charge that alleges all the elements of the offense. *State v. Inselburg, supra* at 827, 330 A.2d at 459; *compare State v. Bussiere*, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978) (striking down an indictment referring to "circumstances involving kidnapping" because it failed to "enumerate the facts establishing the necessary elements of kidnapping") *with State v. Taylor*, 121 N.H. 489, 494, 431 A.2d 775, 778 (1981) (upholding an indictment otherwise similar to that considered in *Bussiere*, because it stated that the circumstances of kidnapping occurred where the defendant "did knowingly confine [the prosecutrix] a person, under his control, with a purpose to terrorize the said [prosecutrix]").

■■ It is more practical, however, to state that a written charge must allege all the elements of an offense that is identified by pleaded facts, *see State v. Day*, 129 N.H. 378, 529 A.2d 887 (1987), since only a defendant charged with a specific offense may effectively invoke double jeopardy protection or educate his counsel on whatever he knows about the offense, so that investigation, discovery and other trial preparation can begin, Thus, it is the requirement to identify a specific offense that determines the State's obligation to plead specific acts and facts, and once a specific offense is identified, there is no further and independent requirement to identify the acts by which a defendant may have committed that offense, or to limit proof of guilt to acts specifically pleaded.

What is true generally is true of indictments and complaints charging accomplice liability. While we do not hold that double jeopardy protection and reasonable trial preparation will never require an allegation of the specific conduct by which an accomplice is supposed to have aided in the commission of the offense,

there is no reason to assume generally that the offense charged cannot otherwise be specifically identified, or that a defendant cannot effectively limit his jeopardy and prepare for trial without such a specification.

These conclusions are exemplified not only by *State v. Ball*, 101 N.H. 62, 132 A.2d 144, and *State v. Burke*, 122 N.H. 565, 448 A.2d 962, but by the two New Hampshire cases on which the defendant principally relies. He first cites us to *State v. Bean*, 117 N.H. 185, 187, 371 A.2d 1152, 1153, in which this court held that an indictment charging attempted statutory rape was inadequate because it failed to allege a "physical act done towards the commission of the offense." The court reasoned that it was not enough to charge an offense merely by use of the statutory term, "attempt," because the term was "indefinite . . . , embracing an inchoate offense." *Id.*

Granting this, it is difficult to find support in *Bean* for the defendant's position. The opinion simply reflects a significant functional difference between the charge of a completed offense and the charge of one merely attempted. The charge of a completed offense describes a result that the perpetrator's conduct has accomplished, and the allegation of this result contributes to the particularity of the charge. In contrast, an allegation simply of an "attempt" will give little or no clue about what is supposed to have happened, in the absence of some indication of the act that constituted the attempt. A mere attempt produces no specifically proscribed result, and the number of acts that a defendant could have performed as substantial steps toward the commission of the offense is virtually unlimited. In requiring that a particular step be identified in charging an attempt, therefore, *Bean* did no more than apply basic standards of pleading; it is no authority for a general requirement to plead specific acts beyond what may be necessary to identify the particular offense.

The defendant next cites *State v. Lurvey*, 122 N.H. 190, 442 A.2d 592 (1982) and quotes a sentence from the opinion that "the information had to set forth the acts that constituted being an accomplice to receiving stolen property, and not merely the language of the accomplice statute." *Id.* at 192, 442 A.2d at 593. Although this statement, quoted out of context, appears on its face to support the defendant's position, a closer reading of the case teaches otherwise.

The defendant in *Lurvey* was prosecuted as an accessory to receipt of a stolen television set and was specifically charged with aiding in the commission of the offense by finding a buyer for the

set, transporting it to the place of sale and accepting money for it. At trial, no evidence was introduced to prove this last act, and the trial court instructed the jury that acceptance of money need not be proven. This court upheld the instruction on the ground that accepting money was not an element of the offense under the statutory definition, and that proof of the first two acts was sufficient proof of aid by an accessory. Although the court did observe in dictum that a description of the defendant's acts as an accessory was necessary, this was true only because the written charge did not describe or identify the offense of receiving stolen property by any factual allegations except those that described the defendant's acts as accomplice. Without a specification of those acts, there would have been no way to identify the particular offense to which the accomplice charge referred. *Accord State v. Vaillancourt*, 122 N.H. 1153, 1154–55, 453 A.2d 1327, 1328 (1982) (where indictment identified offense only by reference to acts of accused accomplice, acts alleged must be sufficient on their face to constitute commission of crime).

*Lurvey*, therefore, did no more than apply the principle that the written charge must identify a specific offense. *Lurvey* did not hold that an accomplice's acts must be specified in an indictment that otherwise identifies the offense in which the accomplice is alleged to have participated, and the case neither weakened the authority of *State v. Ball supra* nor purported to do so.

■ The indictment in the instant case stands in the sharpest contrast to the charge in *Lurvey*. Here, the offense was identified with particularity by alleging the death of the named victim on a given date and place and by describing the stabbing that preceded it. There was no need to list the defendant's possible acts as an accomplice in order to inform him that he was accused of the particular offense of murdering Helen Ring, whether as principal or as accomplice. The trial judge's instructions were therefore correct under *Ball*, and the defendant's requested instruction was properly denied.

■■ As his second and remaining issue on appeal, the defendant challenges the sufficiency of the evidence to prove the elements of deliberation and premeditation required for first degree murder. *See* RSA 630:1-a, II. To sustain this challenge, the defendant bears the burden of persuasion, *State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985), that no rational juror could have found beyond a reasonable doubt, considering the evidence most favorably to the State, *State v. Elbert*, 125 N.H. 1, 12, 480 A.2d 854,

860 (1984), that the defendant engaged in "some reflection and consideration upon the . . . choice to kill or not to kill, and [formed] a definite purpose to kill," *State v. Greenleaf*, 71 N.H. 606, 614, 54 A. 38, 42 (1902). Given the swiftness with which the mind can work, *see id.* (quoting *People v. Majone*, 91 N.Y. 211, 212 (1883)), sufficient proof of these elements does not require evidence that the defendant devoted time to quiet reflection, but may rest on inferences reasonably drawn from the "'character of the weapon employed, the force and number of blows inflicted, the location and severity of the wounds, the place of the crime, previous remarks and conduct indicating preparation, subsequent acts and statements, and every circumstance having a legitimate bearing upon the subject . . . .'" *State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 104 (1983) (quoting *State v. Greenleaf, supra* at 614–15, 54 A. at 43).

The evidence in this case was sufficient to prove that the defendant had reflected on the choice to kill, which the circumstances might present, and had decided to cause the victim's death if those circumstances occurred. The jury was entitled to infer that the defendant deliberately chose to commit a serious crime under conditions carrying a high risk of his detection and personal identification. Because such identification would be the most serious threat that his contemplated victim would pose, the defendant's choice to go to the scene with a knife at his disposal bespoke an intent to use the deadly weapon offensively if that threat materialized. It did materialize when the victim woke from her sleep, whereupon the defendant left nothing to chance and participated in the infliction of so many serious wounds and injuries that the victim's death was a practical certainty. These indications of intentional thoroughness were subsequently confirmed by the defendant's systematic, albeit incompetent, execution of a plan to incinerate the corpse and destroy the inculpatory evidence by burning the crime scene to the ground.

*Affirmed.*

All concurred.