Hillsborough
No. 91-422

THE STATE OF NEW HAMPSHIRE

v.

ARTHUR J. BURLEY

June 18, 1993

*John P. Arnold,* attorney general (*Tina L. Nadeau,* assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Arthur J. Burley, was convicted of second degree murder after a jury trial in Superior Court (*Groff,* J.). On appeal he raises three issues: whether the indictment was constitutionally insufficient; whether the evidence was sufficient to prove, pursuant to RSA 630:1-b, I(b) (1986), that the defendant acted under circumstances manifesting extreme indifference to the value of human life; and whether the trial court erred in instructing the jury that it had to agree unanimously that the defendant was not guilty of the greater offense before it could consider a lesser included offense. For the reasons that follow, we affirm.

On January 7, 1989, the defendant was at home with his ex-wife, Debbie Glines, with whom he had reconciled. He drank at least six beers between noon and 6:00 p.m. At approximately 6:30 p.m., he telephoned 911 requesting an ambulance for a gunshot wound. The police and ambulance crews arrived to find Ms. Glines lying on the kitchen floor with a gunshot wound on the right side of her head, from which she eventually died.

The defendant told the officers on the scene that he had been cleaning a .22 caliber semi-automatic handgun when it accidentally discharged. He agreed to accompany the officers to the police department for an interview, after being assured he was not under arrest. At the station the defendant explained that he had been keeping the handgun and a .22 caliber rifle for a friend. He stated that he retrieved the gun and a loaded clip of ammunition from a closet, placed them on tables in the living room, went to the kitchen for a

beer, and took a cotton swab from the bathroom to clean the gun, which he admitted he had cleaned two weeks before. Later in the interview he admitted that he had loaded the gun, knowing he had made it ready to fire, before getting the beer. He stated that after watching television for twenty minutes, he picked up the gun and went to sit on the living room floor at the entryway to the kitchen. He knew that his ex-wife was in the kitchen. The gun went off, he stated, as he was cleaning excess oil from it, with the gun in his left hand and a finger in the trigger housing. He acknowledged familiarity with the operation of a .45 caliber semi-automatic, which is functionally similar to a .22.

A search of the defendant's apartment revealed two spent bullet casings in a garbage bag. No cotton swabs were found in the living room or kitchen. The defendant agreed to re-enact the shooting at his apartment, which was videotaped by the police. Although at first stating that he did not know what had happened to the empty casing, when the officers told him it had been found in the trash, he admitted that he must have thrown it away. He admitted that he had occasionally "dry-fired" the gun by aiming the unloaded weapon at articles around the room. He was unable to tell the officers where they might find the clip to the .22, which they had been unsuccessful in locating.

Several days later the defendant returned to the police station after locating the clip. It had apparently been in his jacket pocket and had fallen out at his mother's house later on the night of the shooting. At the station the defendant provided another statement to the police. He eventually admitted, after being told of a bullet found lodged in his wall, that the second shell found in the trash came from his having fired the rifle in the apartment two days before shooting his ex-wife. He had been "joking around with it and it discharged." Ultimately, the defendant admitted he had not been cleaning the handgun when he shot his ex-wife, although he denied he had been dry-firing it. He stated that he "was fooling around with it on the floor and it went off." In all, he gave the police three different versions of how he had been holding the gun that night.

The defendant was tried on the charge of second degree murder. He requested and was granted a lesser included offense instruction for manslaughter and for negligent homicide.

■ The first issue raised on appeal is the sufficiency of the indictment. The defendant argues that the indictment was infirm, contrary to part I, article 15 of the State Constitution, because it failed to allege facts demonstrating recklessness or circumstances manifest-

ing extreme indifference to the value of human life, an element of second degree murder as charged in this case. He raises for the first time on appeal the indictment's purported deficiency with respect to the allegation of recklessness. We will therefore not consider the argument. *See State v. Wisowaty*, 133 N.H. 604, 607, 580 A.2d 1079, 1080 (1990).

The indictment charged that the defendant

"did commit the crime of Second Degree Murder in that he recklessly caused the death of Deborah L. Glines (D.O.B.: 5/12/62) under circumstances manifesting an extreme indifference to the value of human life, by shooting her in the head with a pistol . . . ."

An indictment is constitutionally sufficient if it informs a defendant of the charge with enough specificity to allow the defendant to prepare for trial and be protected against double jeopardy. *State v. Pelky*, 131 N.H. 715, 718, 559 A.2d 1345, 1347 (1989). There is no additional requirement, once a crime has been identified with factual specificity, that the acts by which the defendant may have committed the offense be identified. *Id.* at 719, 559 A.2d at 1347.

In *State v. Therrien*, 129 N.H. 765, 533 A.2d 346 (1987), this court, in considering whether an alleged accomplice could be convicted on proof of an overt act not identified in the indictment, discussed the constitutional requirement of specificity. *Id.* at 770–72, 533 A.2d at 348–50. The indictment charging accomplice to first degree murder was sufficient because "the offense was identified with particularity by alleging the death of the named victim on a given date and place and by describing the stabbing that preceded it." *Id.* at 772, 533 A.2d at 350.

Here, the indictment alleges all of the elements of second degree murder, as well as the date of the offense, the name of the victim, and how the defendant committed the offense, *i.e.*, by shooting her in the head. This was sufficient to put the defendant on notice as to what he had to meet at trial. Other specific acts of the defendant or circumstances that would demonstrate his extreme indifference need not be alleged. The defendant argues that, as extreme indifference represents a greater degree of culpability than recklessness, *see State v. Dufield*, 131 N.H. 35, 38–39, 549 A.2d 1205, 1207 (1988), additional factual allegations must appear in the indictment. He cites no authority for this proposition, however, and we are aware of none. The indictment informed the defendant that he was charged with recklessly, under circumstances manifesting extreme indifference to

the value of human life, causing his ex-wife's death on a specific date by shooting her in the head. This was constitutionally sufficient.

■■ The defendant next argues that the evidence was insufficient to prove the element of extreme indifference. We will uphold the verdict unless, viewing the evidence and all reasonable inferences in the light most favorable to the State, no reasonable trier of fact could have found guilt beyond a reasonable doubt. *State v. Evans*, 134 N.H. 378, 383, 594 A.2d 154, 158 (1991). In a prosecution for second degree murder charging extreme indifference to the value of human life, "[t]he existence and extent of disregard manifested" are for the jury to determine on the facts of the case. *State v. Dow*, 126 N.H. 205, 207, 489 A.2d 650, 652 (1985) (quotation omitted).

■ The evidence here showed, *inter alia*, that the defendant was familiar with the operation of a semi-automatic handgun, that he knew he had loaded the .22, and that he knew his ex-wife was in the next room. He had been drinking beer all afternoon and his blood alcohol content nearly five hours after the shooting was .15. At the time of the shooting, he was sitting with his elbows resting on raised knees with the barrel of a gun he knew to be loaded pointing into the kitchen where his ex-wife was located. The gun was cocked and ready to fire, and the defendant's finger was in the trigger housing. A firearms expert testified that due to its safety features the gun could not have fired without simultaneously gripping the safety on the back of the handle and squeezing the trigger. The defendant, who had told the police he knew not to point a gun at anyone, finally admitted that he had been "fooling around" with it after consistently lying by saying he had been cleaning it. On all the evidence the jury was warranted in finding that the defendant's conduct occurred under circumstances manifesting extreme indifference to the value of human life and in thereby finding him guilty of second degree murder.

■ The defendant's final argument concerns the trial court's so-called "transitional" instruction to the jury regarding consideration of lesser included offenses. Pursuant to the defendant's request following denial of his first proposed transitional instruction, the trial court gave the jury an "acquittal first" charge, instructing it to go on to consider lesser included offenses only after finding the defendant not guilty of the greater. The defendant now argues that the jury should have been given an instruction that would have allowed it to move on to consider a lesser offense if, "after all reasonable efforts it

[was] unable to reach a verdict on the greater. . . ." *United States v. Tsanas*, 572 F.2d 340, 346 (2d Cir.), *cert. denied*, 435 U.S. 995 (1978).

This "reasonable efforts" instruction has been approved in other jurisdictions, when requested by the defendant, as an alternative to the "acquittal first" instruction because of the latter's potential for coercing a guilty verdict where holdout jurors might otherwise have caused a mistrial. *See, e.g., United States v. Jackson*, 726 F.2d 1466, 1469 (9th Cir. 1984); *Tsanas*, 572 F.2d at 346; *State v. Powell*, 608 A.2d 45, 46–47 (Vt. 1992); *see also State v. Thomas*, 40 Ohio St. 3d 213, 218–19, 533 N.E.2d 286, 291–92 (1988) (rejecting "acquittal first" instruction as matter of law, regardless of whether or not requested by defendant), *cert. denied*, 493 U.S. 826 (1989).

Even if we were in general agreement with the reasoning of those courts that have adopted the "reasonable efforts" transitional instruction, and thus in an appropriate case might well adopt it, the defendant did not request this instruction in the trial court. We will therefore not consider it here. *State v. Smart*, 136 N.H. 639, 661, 622 A.2d 1197, 1211 (1993). Moreover, on appeal the defendant has abandoned his objection to the trial court's refusal to grant his first proposed instruction, which would have permitted the jury to consider any lesser included offenses at any time without beginning with the greater offense. This objection not having been briefed, it is deemed waived. *Id.*

*Affirmed.*

All concurred.