Hillsborough-southern judicial district
No. 94-763

THE STATE OF NEW HAMPSHIRE

v.

RONALD SCHULTZ, JR.

June 3, 1996

*Jeffrey R. Howard*, attorney general (*Mark D. Attorri*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Ronald Schultz, Jr., was convicted of second degree murder following a jury trial. *See* RSA 630:1-b, I(b) (1986). On appeal, he argues: (1) that the Superior Court (*Murphy*, J.) erred in its instruction to the jury on lesser-included offenses; and (2) that there was insufficient evidence to convict. We affirm.

In January 1994, Russell and Donna Jalbert lived with their three-year-old daughter and Donna's grandmother at 60 Ledge Street in Nashua. Late that month, Donna's father, mother, and brother moved in with them. The living arrangement was intended to be temporary. Donna's parents were relocating from California and needed a place to stay while they moved into their retirement home in New Hampshire. Donna's brother — the defendant — had come to help with the move. Although the living quarters were cramped, the parties remained outwardly friendly toward each other.

On February 15, 1994, at approximately 11:45 p.m., the entire group was at the Jalberts' home. The defendant was sitting in the living room watching television with his mother, and his father had gone to bed. The others were gathered in the kitchen and a back bedroom. Several people, including the defendant and Russell Jalbert, were drinking beer.

At some point, the defendant directed a sarcastic remark toward his mother. Donna Jalbert heard the remark and rolled her eyes in the direction of her husband. At that moment, Russell jumped up, went into the living room, and attacked the defendant. Evidence introduced at trial indicated that Russell had been growing increasingly frustrated with the defendant's disrespectful attitude toward his parents. Until that moment, however, he had not expressed those feelings to the defendant.

Russell began attacking the defendant by punching him in the face. Despite Russell's size advantage, the defendant managed to get out of his chair and fight back, hitting Russell on the side of the head. When the two were standing, Russell pushed the defendant against a wall and continued his attack. The defendant's father, who awoke at the sound of the fight, tried to get between the two men. They continued to fight, however, and Russell eventually pushed the

defendant's head against the wall and yelled at him to leave the house.

When the two men were finally separated, Russell called the police. The defendant retreated upstairs. He removed a gun case from his dresser drawer, took out his .25 caliber hand gun, and went back downstairs. He moved quickly. When he reached the bottom of the stairs, the defendant cocked his gun and approached Russell, daring him to attack and asking why he had started the fight. Russell hung up the telephone and lunged at the defendant. The defendant then fired three shots from his hand gun at close range. The bullets hit Russell — two in the chest and one in the leg — and he later died as a result of the wounds.

In the hours following the incident, the defendant spoke with several Nashua police officers. He explained to Officer Todd Therrien, one of the officers who reported to the scene, that he shot Russell in an effort to retaliate for Russell's attack. According to Officer Therrien, the defendant said: "I was mad. The fight had started. I wanted to get even. I went upstairs. I got my gun, I came down and I shot him." The defendant also said that he did not mean to hurt Russell, but that something "had to be done." He told the officer that he "wanted to teach [Russell] a lesson."

At the police station, the defendant again spoke with police officers, but this time he gave conflicting statements about his state of mind at the time of the shooting. He told Detective John Seusing that as he was coming downstairs with his gun he was thinking of retaliating against Russell. More specifically, in response to a question about what was going through his mind at the time, the defendant said: "Retaliation. . . . all this built up anguish, you know, everything, just everything, I was just, just was ready to explode you know." He also stated, however, that his intention was to defend himself if Russell attacked again.

The defendant's trial lasted several days. At the close of testimony, the trial court instructed the jury on the elements of second degree murder and described the circumstances in which jurors should consider lesser-included offenses. The court stated:

> In order to find the defendant guilty of second degree murder, you must find that the State has proven each of . . . two elements beyond a reasonable doubt . . . . If you determine that the State has not proved those matters beyond a reasonable doubt, why then you must go on and consider whether the defendant is guilty of a similar but less serious crime of manslaughter.

The court then outlined the elements of two types of manslaughter, reckless manslaughter and provocation manslaughter, and treated both as lesser-included offenses to the charge of murder. Neither party challenged the trial court's view that provocation manslaughter is a lesser-included offense to murder.

The court repeated a similar instruction following closing arguments in the moments before submitting the case to the jury. The court rejected the defendant's request for a "reasonable efforts" transitional instruction, which would have allowed jurors to consider lesser-included offenses after they made reasonable efforts to reach a verdict on the second degree murder charge. The jury found the defendant guilty of second degree murder.

*I. Jury Instructions*

The defendant argues that he was prejudiced by the trial court's failure to issue a reasonable efforts instruction. According to the defendant, the trial court's instruction amounted to an "acquittal first" instruction and subordinated his claim that he was only guilty of manslaughter. The defendant also argues that the acquittal first instruction violates his due process rights under the State and Federal Constitutions. Because his constitutional arguments were not adequately briefed and argued, however, we decline to address them. *See State v. Hermsdorf*, 135 N.H. 360, 365–66, 605 A.2d 1045, 1048 (1992).

■ We reject the defendant's characterization of the trial court's charge as an acquittal first instruction. The record demonstrates that the trial court told jurors to consider lesser-included offenses if they found that the State failed to prove the elements of second degree murder beyond a reasonable doubt. The practical effect of the instruction was to allow jurors to deliberate on the offense of manslaughter before unanimously reaching a verdict on the more serious crime of murder. As a result, the charge did not amount to an acquittal first instruction. *See State v. Wise*, 879 S.W.2d 494, 517 (Mo. 1994) (en banc), *cert. denied*, 115 S. Ct. 757 (1995) (instruction telling jurors to consider lesser-included offenses if they "do not find the defendant guilty of murder" is not an acquittal first instruction); *State v. Daulton*, 518 N.W.2d 719, 723 (N.D. 1994) (instruction telling jurors to consider lesser-included offenses if they find that the greater charge "has not been proved" is not an acquittal first instruction). At the same time, the instruction was not a reasonable efforts instruction, and the defendant argues that he was entitled to such an instruction.

The defendant's argument is foreclosed by our decision in *State v. Taylor*, 141 N.H., 89, 677 A.2d 1093 (1996). In *Taylor*, we held that

an acquittal first instruction is the proper transitional instruction in New Hampshire, though a trial court may, under appropriate circumstances, issue a reasonable efforts instruction, such as when the parties agree to such an instruction either before the judge's charge, or, with the court's approval, when a jury is deadlocked. *Id.* at 89, 677 A.2d at 1098.

■ In this case, the trial court issued a mixed instruction which told jurors to consider lesser-included offenses if they found that the State failed to prove second degree murder beyond a reasonable doubt. Given that the defendant received a more favorable instruction than he was entitled to, we cannot say that he was prejudiced by the court's charge.

## II. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to prove that he shot Russell Jalbert "under circumstances manifesting an extreme indifference to the value of human life." RSA 630:1-b, 1(b). We disagree.

Whether a defendant acted with "extreme indifference" is a question of fact for the jury. *See State v. Burley*, 137 N.H. 286, 290, 627 A.2d 98, 101 (1993). In evaluating the defendant's sufficiency of the evidence claim, "[w]e will uphold the [jury's] verdict unless, viewing the evidence and all reasonable inferences in the light most favorable to the State, no reasonable trier of fact could have found guilt beyond a reasonable doubt." *Id.*

■ Contrary to the defendant's assertion, extreme indifference does not require proof of particularly vicious conduct. Rather, the critical factor is the degree to which the defendant disregards the risk of death to another. *See State v. Dufield*, 131 N.H. 35, 38, 549 A.2d 1205, 1207 (1988). As we have explained, a defendant acts with extreme indifference to the value of human life when he demonstrates a "blatant disregard of an unjustifiable risk" of death. *State v. Eldridge*, 134 N.H. 118, 121, 588 A.2d 1222, 1224 (1991).

> "Circumstances manifesting an extreme indifference to the value of human life" means something more than merely being aware of and consciously disregarding a substantial and unjustifiable risk. If the advertence to the risks involved and the disregard are so blatant as to manifest extreme indifference to life, then the offense is murder.

*State v. Dow*, 126 N.H. 205, 207, 489 A.2d 650, 652 (1985) (quotations and brackets omitted).

In this case, testimonial and physical evidence indicated that the defendant retrieved a gun from his upstairs bedroom so that he could retaliate against Russell. He loaded it and then moved aggressively downstairs. When he reached the bottom of the stairs, he cocked the gun and approached Russell, pointing the weapon and daring him to continue the fight. When Russell lunged at the defendant, he intentionally fired two shots into Russell's chest.

The defendant focuses on the fact that Russell lunged at him, arguing that he had to shoot to prevent additional abuse at the hands of a large, strong, and angry man. Under those circumstances, the defendant asserts that his actions did not manifest extreme indifference to the value of human life. In our view, however, the defendant's focus is too narrow. We believe that the jury, taking into account all the circumstances leading up to the shooting, could have found that the defendant's conduct created such a high risk of death that it amounted to extreme indifference to human life. Accordingly, we reject the defendant's assertion that there was insufficient evidence to convict him of second degree murder.

*Affirmed.*

All concurred.