Rockingham
No. 99-388

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER DOUCETTE

July 2, 2001

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, assistant attorney general, on the brief and orally), for the State.

*Jenifer Bensinger Ackerman*, assistant appellate defender, of Concord, by brief, and *Richard Samdperil*, assistant appellate defender, orally, for the defendant.

BROCK, C.J. The defendant, Christopher Doucette, was convicted on one count of second degree murder, RSA 630:1-b (1996), and one count of conspiracy to commit murder, RSA 629:3 (1996). On appeal, he argues that the Trial Court (*McHugh*, J.) erred when it failed to instruct the jury that it must find that the State proved the specific acts alleged in the indictment. We affirm.

Two young women, Leeann Millius and Kimberly Farrah, were stabbed to death at Hedgehog Pond Park in Salem in September of 1997. Eric Jeleniewski, James Grant and Christopher Doucette were arrested in connection with the murders.

Grant initially told police that Jeleniewski had killed Farrah, the defendant had killed Millius by stabbing her in the neck, and that Grant had inflicted superficial wounds to Millius' abdomen after her death by poking her lightly with the knife. On December 3, 1997, the defendant was indicted for first degree murder.

During a subsequent meeting with prosecutors, Grant revealed that he, not the defendant, had stabbed Millius in the throat, causing her death, and that it was the defendant who had inflicted the superficial wounds to Millius' abdomen. On November 5, 1998, the defendant was re-indicted. Count I of the new indictment alleged:

> On or about September 13, 1997, Christopher Doucette, acting in concert with James Grant, purposely caused the

death of Leeann Millius by repeatedly stabbing her in the neck and abdomen at Hedgehog Park in Salem.

Count II of the indictment charged the defendant with conspiracy to commit murder.

Grant testified that on September 12, 1997, he, Jeleniewski and the defendant drove to Salem to see Leeann Millius. At some point, Grant and Jeleniewski took a knife from Millius' dresser. Grant gave the knife to Jeleniewski who gave it to the defendant. The defendant put the knife in Jeleniewski's car.

Later that day, Grant, Jeleniewski and the defendant accompanied Millius and her friend, Kimberly Farrah, to a playground in Salem. Millius and the defendant went for a walk in the woods. Farrah left Jeleniewski and Grant to find Millius and the defendant. During this time, according to Grant, Jeleniewski told him that he had decided to kill the women, that he had discussed the idea with the defendant, and had obtained his approval.

Shortly thereafter, Grant left to get a sandwich. When he returned, the defendant and Jeleniewski were fighting and the women were upset. Grant testified that the fight was a fake fight designed to separate the two women.

The group returned to Millius' house and the girls went inside. According to Grant, it was during this time that the defendant and Jeleniewski discussed how they were going to separate the women and agreed that the defendant would walk off with Millius while Jeleniewski remained with Farrah.

Farrah and Millius returned to their car and the group proceeded to Hedgehog Pond Park. When they arrived, the defendant and Millius went into the woods, while Jeleniewski and Farrah went into a bathhouse. Grant remained at a picnic table. Jeleniewski stabbed Farrah to death in the bathhouse within minutes of their arrival at the park.

Grant testified that, after hearing Farrah scream, he found Millius and the defendant, and asked the defendant to check on Jeleniewski while he remained with Millius. When the defendant returned, he pulled Grant aside. Grant testified that the defendant had obtained the knife from Jeleniewski and gave it to Grant. Grant also testified that the defendant was crying and emotional, and begged Grant not to stab and kill him. According to Grant, the defendant said that the two of them had to kill Millius. When Grant told the defendant he couldn't do it, the defendant returned with Grant to the bathhouse to look at Farrah's body.

According to Grant, he and the defendant returned to Millius, and the three walked to a picnic table near the pond. The defendant

began caressing Millius' shoulders and head but then grabbed her head and tried to twist it to break her neck. When Millius jumped back, the defendant lunged at her. Grant testified that the defendant put his hands around her neck and threw her to the ground. He continued to squeeze her neck until she stopped moving. Once Millius was unconscious, the defendant told Grant to stab her. Grant stabbed Millius once or twice in the throat. When Millius screamed, the defendant kneeled on her neck for a period of time while the defendant and Grant restrained her. Then, the defendant used the knife to inflict a number of less serious wounds to Millius' neck and abdomen.

The trial court initially instructed the jury on the crime of first degree murder, in part, as follows:

> As I have just indicated, ladies and gentlemen, the State must prove beyond a reasonable doubt that the acts of the defendant either caused or in concert with the acts of James Grant caused the death of another human being, namely, in this case, Leeann Millius.

> Ladies and gentlemen, a defendant is guilty of first degree murder if the offense is committed by a combination of his own conduct and the acts of other people for whom he is legally accountable. A person is legally accountable for the conduct of another if, with a purpose of promoting or facilitating the commission of the offense, he aids the other person in committing it.

> The indictment in this case charges that the defendant committed the crime of first degree murder by acting in concert with James Grant, a person for whom the defendant is legally accountable. Therefore, if you find that the crime of first degree murder occurred, the State must prove the defendant guilty of that first degree murder by proving beyond a reasonable doubt that the defendant is accountable for the conduct of James Grant and that the offense was committed by a combination of the defendant's own acts and the acts of James Grant.

> The State may prove that the defendant is legally accountable for the acts of James Grant by proving beyond a reasonable doubt that the defendant aided James Grant in committing the offense and that he did this with the purpose of promoting or facilitating the crime of first degree murder. It is not enough for the State to only prove

that the defendant was physically present while James Grant, by his own conduct, committed the offense. The State must prove that the defendant committed acts to aid James Grant and that he committed acts with the purpose of promoting or facilitating the commission or the murder of Leeann Millius.

The court then instructed the jury on the lesser included charge of second degree murder, in pertinent part, as follows:

The definition of second degree murder has two parts. The State must prove each part of that definition beyond a reasonable doubt. The State must prove first that the defendant caused the death of another person. This means the death of another person was the direct result of either the defendant's actions solely or his actions in concert with the actions of James Grant.

Secondly, they must prove that the defendant acted knowingly. A person acts knowingly when he realizes and is aware of what he was doing and of the nature of his conduct and when he does not act through ignorance, mistake, or accident.

During the second day of deliberations, the jury sent a question to the court, asking, "To find someone guilty of second degree murder do they have to be involved with the actions that result in the death of a person?" The court answered the question as follows:

Because you have asked a question about 2nd degree murder, the Court assumes that you have unanimously agreed that the defendant is not guilty of 1st degree murder.

With respect to this case, the only difference between the elements of 1st degree murder and the elements of 2nd degree murder is the different mental state. To prove 1st degree murder the State must prove that the defendant acted purposely as that term is defined for you on pages one and two of the jury instructions concerning murder that you have. To prove 2nd degree murder, the State must prove that the defendant acted knowingly as that term is defined on page 7 of the same jury instruction.

In answer to your specific question, in order for you to find the defendant guilty of 2nd degree murder the State

must prove beyond a reasonable doubt that the defendant caused the death of another. This means the death of another person was the direct result of either the defendant's actions solely or his actions in concert with the actions of James Grant. Acting in concert with means he acted with the purpose of promoting or facilitating the commission of the offense or he aids or agrees or attempts to aid James Grant in planning or committing the crime of murder.

No verdict was reached by the end of the day and the jury was sent home. The following morning, defense counsel asserted that the defendant had been charged solely as an accomplice and that the State was required to prove that the defendant committed the specific acts alleged in the indictment, that is, that the defendant stabbed Leeann Millius in the stomach and the throat, for the jury to find him guilty as an accomplice to second degree murder. Over the defendant's objection, the court sent a supplemental answer to the jury's question as follows:

Yesterday afternoon the Court gave you a written answer to your question concerning 2nd degree murder. The last sentence of the Court's answer dealt with the meaning of the phrase "acting in concert with." The Court should have included the following sentence after discussing the meaning of that phrase. "The State has charged the defendant with the offense of murder by acting in concert with James Grant in causing the death of Leeanne Millius by repeatedly stabbing her in the neck and abdomen at Hedgehog Park." Please consider this additional answer as part of the overall answer given to your question yesterday.

Later that day, the jury convicted the defendant of conspiracy to commit murder and second degree murder.

At oral argument the defendant asserted that by including the words promoting, facilitating, aiding or attempting to aid in its instruction to the jury, the court impermissibly added four statutory variants of accomplice liability that were not included in the indictment. Because the defendant did not raise this issue below and failed to brief it on appeal, we conclude that the argument is waived. *See Quirk v. Town of New Boston*, 140 N.H. 124 (1995); *State v. Mountjoy*, 142 N.H. 648 (1998).

The defendant asserts, first, that he was charged only as an accomplice and not as a principal. According to the defendant, this

distinction is important, because if he was charged only with accomplice liability, the language "by repeatedly stabbing her in the neck and abdomen" was an essential part of the indictment and constituted an element of the crime. Because it was an element of the crime, the jury should have been instructed that in order to convict the defendant as an accomplice, it would have to agree unanimously that he had stabbed the victim in the neck and abdomen. We disagree.

■ Under New Hampshire law, the "acting in concert with" language used in the indictment is ordinarily sufficient to charge a defendant as both a principal and an accomplice. *See, e.g., State v. Sinbandith*, 143 N.H. 579, 584 (1999). Nevertheless, the defendant argues that the procedural history of the case and the "fact" that there was no evidence that the defendant was a principal in the murder support the conclusion that he was charged solely as an accomplice. We disagree.

■ While it is true that the defendant was initially charged only as the principal in the murder, and that the State later *nol prossed* the indictment and replaced it with one alleging that the defendant acted "in concert with" James Grant, we disagree with the defendant that by doing this the State amended the indictment to allege solely accomplice liability. Rather, we conclude that the State added the "acting in concert with" language to place the defendant on notice that he was being charged as both a principal and an accomplice to Millius' murder.

The record further supports the conclusion that the defendant knew he was being charged as both a principal and an accomplice. In its closing argument, the State argued that the defendant was charged as both a principal and accomplice. The court also initially instructed the jury on both principal and accomplice liability, stating that the defendant could be found guilty if he "acted alone or in concert with James Grant." The defendant did not object to either the argument or the jury instruction.

Finally, we disagree with the defendant's assertion that the State could not have charged the defendant with principal liability because the evidence would not support such a finding. There was sufficient evidence presented at trial from which the jury could have convicted the defendant as a principal.

The defendant next argues that even if the indictment charged him with both principal and accomplice liability, the State was obligated to prove the specific facts charged in the indictment

because the defendant reasonably relied upon those facts in the preparation of his case. According to the defendant, the trial court's failure to respond to the jury's question by instructing it that it could not find the defendant guilty without finding the defendant performed the specific acts charged in the indictment amounted to an impermissible amendment of the indictment. Again, we disagree.

We evaluate a claim that the trial court refused to answer a jury question in the language requested by the defendant in the context of the entire charge and all of the evidence. *See State v. Seymour*, 140 N.H. 736, 746 (1996), *cert. denied*, 519 U.S. 853 (1996). "The requirement that a defendant be tried only for crimes for which he or she has been indicted, *see* N.H. CONST. pt. 1, art. 15, is not violated whenever a trial judge provides a jury instruction that does not mirror the indictment." *State v. Hutchinson*, 137 N.H. 591, 593 (1993). Instructions that alter the form of the indictment, without altering its substance, are always permissible. *See id.* Jury instructions that change an element of an offense charged by a grand jury are automatically in error. *See State v. Elliott*, 133 N.H. 759, 764 (1990). "In between these two extremes is the amendment that does not alter the crime charged in an indictment, but changes an allegation in the indictment that has the effect of specifying and circumscribing the scope of the crime alleged . . . ." *Id.* (quotation omitted).

We held in *State v. Therrien*, 129 N.H. 765, 769 (1987), that an accomplice may be convicted on the basis of overt acts not specifically alleged in an indictment. "[I]t is the requirement to identify a specific offense that determines the State's obligation to plead specific acts and facts, and once a specific offense is identified, there is no further and independent requirement to identify the acts by which a defendant may have committed that offense, or to limit proof of guilt to acts specifically pleaded." *Id.* at 770. Although there may be cases in which double jeopardy protection and reasonable trial preparation would require an allegation of the specific conduct by which an accomplice is supposed to have aided in the commission of the offense, such specification is not always required. *See id.* at 771.

As in *Therrien*, the indictment in this case sufficiently informed the defendant of the particular offense with which he was charged by informing him of the date of the murder, the cause of death and the victim. This information was sufficient to allow the

defendant to prepare his defense; this is not a case in which double jeopardy and reasonable trial preparation required an allegation of the specific conduct by which the defendant was supposed to have aided in the commission of the offense.

■ The defendant points to *State v. Elliott* in support of his argument that the trial court's instruction to the jury impermissibly amended the indictment. In *Elliott*, we held that the test to determine whether changing an allegation in the indictment causes an impermissible amendment of the indictment is "whether the change prejudices the defendant either in his ability to understand properly the charges against him or in his ability to prepare his defense." *Elliott*, 133 N.H. at 764 (quotations omitted). The defendant argues that the trial court in this case altered part of the indictment's substance and prejudiced him when it refused to include the specific acts alleged in the indictment in its charge to the jury. We disagree.

Even assuming, without deciding, that the jury instruction altered the indictment in more than a formal way, the record makes clear that the defendant did not rely upon the fact that the specific acts which had been charged would have to be proven by the State in order to obtain a conviction. First, the defendant did not object when the State noted in closing that the defendant had been charged as both a principal and an accomplice. Nor did he object when the State argued that "an accomplice is simply a person who agrees to facilitate or aid somebody with the purpose of [*sic*] a particular crime be committed. . . . The defendant did that when he separated Leeann from Kim. The defendant did that when he kept Leeann in the park until he could get the knife. That's an example of somebody who is guilty of accomplice to murder." Had the defendant relied upon the language of the indictment, which he says suggests that the State had to prove that the defendant stabbed the victim's neck and abdomen, surely the defendant would have objected to this portion of the State's closing argument. Second, the trial court's initial charge to the jury did not contain an instruction that the jury had to find that the defendant committed the specific acts alleged in the indictment in order to convict him of accomplice to murder. The defendant did not object to the initial charge.

Finally, the defendant argues that the "problem" caused by the trial court's failure to instruct the jury that it must find the facts alleged in the indictment was exacerbated by its failure to give a supplemental unanimity instruction. Again, we disagree.

■ In order to convict the defendant of a criminal offense, a jury must unanimously agree that the defendant committed the material elements of the offense beyond a reasonable doubt. RSA 625:10 (1996); *State v. Greene*, 137 N.H. 126, 128 (1993). Therefore, in order to find the defendant guilty as an accomplice to second degree murder, the jury was required to agree unanimously that the State had proven two elements of the crime beyond a reasonable doubt. First, the jury had to conclude that the defendant had the requisite *mens rea*; that is, that the defendant had the purpose to promote or facilitate the crime of second degree murder. *See* RSA 626:8, III(a). Second, the jury had to conclude that the defendant either solicited another person to commit the crime or aided, agreed, or attempted to aid the other person in planning or committing the crime. *Id.* The record reflects that the jury was properly instructed that it had to agree unanimously that the State had proven these elements beyond a reasonable doubt.

Nevertheless, the defendant argues that our holding in *State v. Greene*, 137 N.H. at 128, requires jury unanimity regarding the factual predicates that satisfy the elements, as well as unanimity on the elements themselves. The defendant identifies thirty-eight different acts in his brief, each of which could arguably have satisfied the element of "solicit, aid, agree or attempt to aid," and argues that the jury had to be unanimous on at least one such act in order to convict the defendant of second degree murder as an accomplice. We disagree with the defendant's reading of *Greene*.

The defendant in *Greene* was charged with misdemeanor simple assault. *Id.* at 127. The defendant in *Greene* was prosecuted pursuant to a statute stating that a person is guilty of simple assault if he "purposely or knowingly caused bodily injury or unprivileged physical contact to another. . . ." RSA 631:2-a (1996). Thus, in order to find a defendant guilty of simple assault under this provision of the statute, the jury would have to agree unanimously that the defendant had the requisite *mens rea*; that is, that he acted "purposely or knowingly." The jury would also have to agree unanimously that he caused bodily injury or agree unanimously that he caused unprivileged physical contact. Thus, bodily injury or unprivileged physical contact are alternative elements of the crime.

The complaint in *Greene* charged that the defendant "did knowingly cause unprivileged physical contact with another . . . in that [she] did punch . . . Sergeant Donald Irvin in the face with her fist and in the torso with her fist and did further kick him about the

body." *Id.* Because the complaint alleged three separate blows, each of which could have provided an alternative basis for finding the element of unprivileged physical contact, we held that it was error for the trial court to instruct the jury that it did not have to agree as to which one of several of the alleged blows occurred. *Id.* at 129. In so holding, we noted that "had the complaint alleged that the defendant had caused bodily injury by striking the officer three times, the blows would have constituted the means of causing injury rather than elements themselves. In such a case, jury unanimity would be required only as to the element of the injury, not as to which of the several blows occurred." *Id.*

Because the element at issue in *Greene* was, as alleged in the indictment, unprivileged physical contact, the defendant in *Greene* could potentially have been convicted of three separate assaults. She could have been convicted of knowingly causing unprivileged physical contact by punching the victim in the face. She could have been convicted of knowingly causing unprivileged physical contact by punching the victim in the torso with her fist. She could also have been convicted of knowingly causing unprivileged physical contact by kicking the victim about the body. Because any one of these contacts could have provided the basis for finding the element of unprivileged physical contact, in order to convict the defendant, the jury had to be unanimous as to which unprivileged physical contact occurred.

■ Here, there is no possibility that the defendant could have been convicted as an accomplice to the murder of Leann Millius thirty-eight different times, on the basis of the thirty-eight different acts the defendant sets forth in his brief. The underlying crime, that is, the second degree murder of Leann Millius, was committed only once. Thus, the defendant could have been convicted as an accomplice to this single crime only once, no matter how many of the different acts could support the conclusion that he "solicited, aided, agreed or attempted to aid" in the murder. Therefore, the jury needed to be unanimous only as to whether the defendant did, in fact, "aid, agree or attempt to aid" in the murder, not as to the factual predicates which might establish this element. Because the jury needed to be unanimous only as to the elements of the crime of accomplice to second degree murder, and because the jury's question did not reflect confusion about the need for unanimity on the elements, no supplemental unanimity instruction was required.

The defendant raised other issues in his notice of appeal, but did not brief them. Therefore, they are deemed waived. *State v. Monroe*, 142 N.H. 857, 873 (1998), *cert. denied*, 525 U.S. 1073 (1999).

*Affirmed.*

BRODERICK and DALIANIS, JJ., concurred.